(No. 36526.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
WALTER J. GOODPASTER, Appellant.

*Opinion filed October 28, 1966.*

JAMES W. MCROBERTS, JR., of East St .Louis, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and K. T. HUBLER, State's Attorney, of Marion, (FRED G. LEACH, Assistant Attorney General, of counsel,) for the People.

Mr. Justice Solfisburg delivered the opinion of the court:

The defendant, Dr. Walter J. Goodpaster, was indicted in the circuit court of Williamson County for the murder of Margaret Strunk. On motion of defendant, the venue was changed to Massac County where the defendant was tried by a jury, found guilty, and sentenced to the penitentiary for a term of 199 years. Defendant's petition under the Post-Conviction Hearing Act was denied. Defendant appeals from the original judgment and the order denying his subsequent petition, on the ground that his constitutional rights were violated.

The decedent, Margaret Strunk, was killed by a shot from a M1 .30 caliber carbine four-tenths of a mile east of defendant's home about sunrise on December 25, 1959. Decedent and her companion, Bernard Dobraski, had been drinking in taverns in Colp, Illinois, and were returning to her home on foot. As they passed Dr. Goodpaster's home, an altercation ensued between the defendant and Dobraski. The defendant testified that he arose early and let his Great Dane out. About 6:30 A.M. he heard the dog barking. He went outside and saw the form of a man he could not identify with a rock in his hand. An argument ensued and Dobraski, in a drunken condition, approached defendant and hit him with the rock. Defendant and his son turned and went back to the house telling Dobraski to "leave us alone." Defendant is corroborated in his testimony by his son, who had come out of the house.

Dobraski's version of the incident is that he had thrown some rocks at the Great Dane, when defendant ran out into the road cursing them and threatening them with a pistol. He put his hand on Dobraski's shoulder and kicked him several times. After they had proceeded east about 30 yards, defendant went back to his home.

According to Dobraski, he and the deceased had walked some distance down the road holding hands, when defend-

ant's truck came up behind them and stopped. As they turned around, defendant was pointing a carbine at them. He shot deceased in the head and Dobraski ran off into the woods while defendant shot two or three more times. Dobraski then fell into a creek and as he was lying there, someone shot him twice in the head with a derringer pistol.

Defendant denied being in his truck that day, denied owning the weapons involved, and denied shooting anyone.

The defendant's primary contention is that he was not proved guilty of murder beyond a reasonable doubt. He attacks the testimony of Dobraski connecting defendant with the shooting on the basis of his intoxicated condition, his head injury received from the shooting and his general character. Defendant also claims that it was too dark for Dobraski to identify the killer.

Dobraski's eyewitness account of the shooting, however, was corroborated by the testimony of Lester and Lavern Johnson, who saw defendant's truck being backed down the road after the shooting. Two employees of defendant, Hagler and Dunning, heard the shots and thereafter saw defendant's truck backing up the road and entering defendant's driveway. Dunning also testified that as he came to work he saw defendant leaving his house in the truck; that after the shots were fired he saw defendant's truck being backed up to defendant's drive.

We have examined the entire record, including the testimony of defendant's family and secretary, which support defendant, and we find a direct and irreconcilable conflict in the testimony. In such a circumstance it is the peculiar prerogative of the jury to determine where the truth lies. We are convinced that there was sufficient evidence offered by the People, if believed by the jury, to establish defendant's guilt beyond a reasonable doubt. In such a case we will not disturb the determination of the jury.

Defendant, however, insists that on the post-conviction hearing it was proved that Dunning lied in his testimony

at the trial with the knowledge of the State's Attorney. It appears from the record of the post-conviction hearing that after the trial, Dunning made an affidavit in the presence of the sheriff, the public defender, a minister and two attorneys to the effect that he lied and did not see defendant leave his driveway in his truck the morning of the shooting, but that he was told to so testify by the State's Attorney. At the time of this statement, Dunning was incarcerated in the local jail on a robbery charge. Thereafter he executed an affidavit recanting his prior statement and stating that he told the truth upon the trial and made the prior affidavit in the expectation that he would be supplied a lawyer.

We have examined the affidavits, counteraffidavits, and testimony on the post-conviction hearing and we feel that it was for the trial court to determine whether the People knowingly used perjured testimony. (*People* v. *Alden,* 15 Ill.2d 498, 503; *Davies* v. *People,* 10 Ill.2d 11, 15.) While we think that the post-conviction proceedings established Dunning as unworthy of belief, we do not believe that the knowing use of perjured testimony was established so as to require a new trial.

Defendant further claims error in the failure of the court to give to the jury tendered manslaughter instructions. As we examine the conflicting evidence it appears that only two conclusions are permissible depending on the jury's determination of the credibility of the witnesses. Defendant and his witnesses insist that he did not shoot the decedent. The evidence adduced by the State tends to show that defendant had an altercation with Dobraski; that thereafter he returned to his house and obtained a rifle; that he followed the couple some distance in his truck and then shot the decedent. The evidence linking defendant to the homicide is inconsistent with a theory of manslaughter. There is no evidence in the record to support defense counsel's present hypothesis that Dobraski enraged the defendant by hitting

him with a rock, whereupon defendant shot at Dobraski and accidentally killed decedent. In the absence of some evidence to support a manslaughter conviction, instructions on manslaughter are improper. *People* v. *Burnett,* 27 Ill.2d 510; *People* v. *Tanthorey,* 404 Ill. 520.

Defendant also urged that his constitutional rights were violated when evidence was adduced concerning his conduct at the scene of the shooting. The morning of the killing the sheriff took defendant to the scene, after denying defendant's request to call his attorney. While at the scene the State's Attorney asked defendant if he had ever seen the dead woman before and defendant answered that he had not. Several witnesses testified that they did not see defendant look at the body before denying that he knew decedent. Defendant contends that such evidence was barred under the doctrine of *Escobedo* v. *Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977.

Since the trial in this case took place in October, 1960, prior to the effective date of *Escobedo,* June 22, 1964, the stringent requirements there set forth are not applicable. (*Johnson* v. *New Jersey,* 384 U.S. 719, 16 L. ed. 2d 882.) It is therefore sufficient to point out that there is no contention that defendant's statements were involuntary, and no objection was made at the trial to their admission in evidence. The trial court committed no error in this regard.

We have carefully examined other allegations of error in the trial of the cause and we conclude that they are without merit. Defendant has received a fair trial free of substantial error, and we cannot say that the jury was incorrect in its verdict.

The judgments of the trial court in the original case and upon the post-conviction hearing are, therefore, affirmed.

*Judgments affirmed.*