48784. POWELL v. THE STATE.

HALL, Presiding Judge. Robert Powell was indicted for the December 1972 murder of Griffin Evans, and charged with having beaten him to death with a hammer. He was tried by a jury; was convicted of voluntary manslaughter; and appeals the denial of his new trial motion.

The parties stipulated that Evans died as a result of a blow or blows to the face with a blunt instrument. At trial, two policemen

testified that they were called on the morning of December 16, 1972 to the residence of Julia Hawthorne near whose rear kitchen door Evans' body was found in a pool of blood, bearing marks of eleven different mutilating blows to the head. Fifty-seven feet away beneath Mrs. Hawthorne's window, at the beginning of a trail of blood leading to the body, were found a bloody hammer belonging to Evans and used in his work, five of Evans' teeth, and a head imprint in the ground. Mrs. Hawthorne testified that Evans had been at her house the evening before, that Powell had come in as Evans was leaving, that Powell had immediately turned and followed Evans out, that she then "heard a bumping by the side of the house right at the window," but that when she went out onto the porch to look down the driveway she saw nothing. There was testimony of prior bad feeling between Powell and Evans. Powell made a sworn statement to the jury in his defense, stating that Evans had left Mrs. Hawthorne's house before he himself did; that when he emerged sometime later he found that Evans had been waiting for him outside and Evans jumped him and hit him on the head with a hammer. Powell then found a board or a 2 by 6 and punched at Evans with it until Evans fell, at which time Powell ran away. Powell also testified that he had been "drinking pretty near all day," and that shortly before emerging and finding Evans outside, he had drunk an additional half pint of "scrap-iron whiskey." There was testimony that on the 16th Powell was observed to have a small knot or swelling on the side of his head. No board, 2 by 6, or similar object was found in the vicinity of the crime.

1. The evidence detailed above is sufficient to support the verdict.
2. Powell argues that the trial court erred in failing to charge the jury sufficiently on the issue of intent, and that although no request was made so to charge the court should nonetheless have charged the substance of Code Ann. § 26-605 that intent may be found in consideration of various factors. The intent, that is, malice, required for murder was amply explained, as was the mental state incident to voluntary manslaughter. This enumeration urges in effect that the trial judge should have defined the word "intent" in general. However, "upright and intelligent jurors would have no difficulty in understanding the meaning of a simple word like 'intent,' and no detailed definition need be given." *Treadwell v. State,* 129 Ga. App. 573 (200 SE2d 323). The enumeration is without merit.

3. Powell argues that under *Howell v. State,* 123 Ga. App. 306 (180 SE2d 599), because his sworn statement injected a theory of involuntary manslaughter into the proceedings, he was entitled to have the jury instructed on that lesser offense. The number and ferocity of the blows deceased was shown to have sustained, however, ousts the possibility of involuntary manslaughter, as defined in Code Ann. § 26-1103. "The number of wounds inflicted leaves no doubt on the question of intent or voluntariness." *Addison v. State,* 124 Ga. App. 467, 468 (184 SE2d 186) (numerous knife wounds in addition to fatal chest wound); accord, *Teal v. State,* 122 Ga. App. 532 (177 SE2d 840) (15 or more blows with a blunt instrument).

Powell argues that a charge on involuntary manslaughter was required even though deceased suffered numerous wounds, and that *Addison* is distinguishable, because in *Addison* there was evidence that accused inflicted all the wounds whereas here there is no evidence that Powell did more than strike a blow or perhaps more at deceased who could subsequently have been battered by another. This argument is not persuasive. Powell was tried for homicide, that is, for causing death. If the jury concluded that Powell was not the person who caused *death,* then their duty was to acquit him, not to shop around among theories on which to convict. Therefore, the only fashion in which the theory of involuntary manslaughter could come into play on the facts presented by deceased's condition taken together with Powell's sworn statement would be for us to indulge the unrealistic possibility that after Powell unintentionally killed him or struck him a deadly blow in self defense another person subsequently came along and gratuitously battered the dying or dead body so that Powell, though responsible for a *fatal* wound, should not be credited with the multiplicity of wounds which argues voluntary manslaughter. Such a possibility, which was not supported by any evidence at the trial, is entirely too unlikely to inject an honest issue of involuntary manslaughter, and therefore there was no error in the failure to charge.

4. Powell enumerates as a fourth error the trial judge's having charged on voluntary manslaughter, Code Ann. § 26-1102, arguing that there was no evidence that he acted solely as the result of a sudden, violent and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person, because there was no evidence of provocation. On the contrary, Powell's sworn testimony was that as he

emerged from Julia Hawthorne's house deceased jumped at him and hit him a glancing blow to the head with a hammer, and that he himself in backing away, backed into a board and then began "jugging at him [deceased] with the board. . ." until deceased fell. Testimony of the hammer blow was sufficient to introduce the theory of provocation and to call for a charge on voluntary manslaughter. Powell urges that *Varnum v. State,* 125 Ga. App. 57 (186 SE2d 485), in which this court reversed a conviction on voluntary manslaughter because there was no evidence authorizing a charge on or conviction of that offense, is "practically identical" to this case, because in both situations there was evidence of previous minor argumentation between deceased and accused and in both cases deceased was discovered murdered. We find no relationship between this case and *Varnum* on the critical point of provocation. Here, Powell testified to deceased's striking him and his striking back. In *Varnum,* there were no witnesses to the crime, but the accused husband's position was that he left his wife in their trailer home well and preparing for a bath, and he returned to find her murdered and an intruder fleeing from the back door. In *Varnum,* any theory of adequate provocation of accused without subsequent "cooling" time was entirely unsupported by any evidence and would have been the merest conjecture. Reversal there was in order, but that case does not support Powell's position here. The charge on voluntary manslaughter was correctly given.

5. As the fifth error, Powell enumerates the trial court's failure to charge, without a request, on the law of circumstantial evidence. It is true, as Powell asserts, that in a wholly circumstantial evidence case, failure to charge on circumstantial evidence even in the absence of a request to do so is error for which a new trial may be required on appropriate facts. *Gallman v. State,* 127 Ga. App. 849 (195 SE2d 187); *Hamilton v. State,* 96 Ga. 301 (22 SE 528); see also *Campbell v. State,* 129 Ga. App. 836 (201 SE2d 666), and cits. However, unless the evidence against accused is entirely circumstantial this rule does not apply. Here, the evidence presented against Powell and enumerated above was not entirely circumstantial but included direct evidence as well, and the rule contended for does not apply. There was no error in the failure to charge.

6. Powell's last enumeration claims that the case should not have been submitted to the jury because the state's evidence failed to show that he had committed a crime and his own testimony

advanced the theory of self defense. *Jackson v. State,* 210 Ga. 303 (79 SE2d 812), advanced as authority for Powell's position, reversed a conviction based upon inadequate circumstantial evidence; however, in that case there was no evidence that accused and deceased had previously known each other, no evidence that accused's gun had fired the fatal shots, and no evidence of how long it was after deceased and accused went out together that shots were heard. The state's evidence presented at Powell's trial was not similarly deficient and *Jackson* is distinguishable. This enumeration, apparently again urging the general grounds, is without merit. Additionally, the jury was charged on the law of self defense, and evidently rejected Powell's contentions in that regard.

The six enumerations of error being without merit, the judgment is affirmed.

*Judgment affirmed. Evans and Clark, JJ., concur.*

Argued November 7, 1973 — Decided January 16, 1974.

*Harris, Chance & McCracken, William R. McCracken,* for appellant.

*Richard E. Allen, District Attorney,* for appellee.