347 So.2d 1389 (1977)
George Edward CALDWELL
v.
STATE of Mississippi.
No. 49487.
Supreme Court of Mississippi.
July 20, 1977.
Anthony J. Sabella, Memphis, Tenn., for appellant.
A.F. Summer, Atty. Gen. by Henry T. Wingate, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, SUGG and BROOM, JJ.
BROOM, Justice, for the Court:
Death penalty for murder was the sentence resulting from trial of the defendant (appellant Caldwell) in the Circuit Court of DeSoto County. Assignments of error briefed raise questions relating to (1) sufficiency of evidence to establish corpus delicti; (2) refusal of the trial court to grant certain requested defense instructions; and (3) constitutionality of the Mississippi death penalty statute as it was prior to Jackson v. State, 337 So.2d 1242 (Miss. 1976). Affirmance would be ordered here except that retrial with bifurcated aspects is required under Jackson which was mandated by decisions of the United States Supreme Court.
FACTS: An argument between defendant Caldwell and a Mr. Patrick (Assistant Manager of Big Star Super Market) concerning payment for a pack of cigarettes led to a gun fight in Hernando, Mississippi, during which Caldwell shot and killed Police *1390 Officer Rory W. Key. Caldwell purchased a six-pack of beer, went outside, and returned into the store for the cigarettes. Then he attempted to pay for them without waiting at the end of the check-out line, but Patrick insisted that Caldwell await his turn. At that time Caldwell walked out of the store with the cigarettes unpaid for and he was followed by Manager Patrick who asked Caldwell for payment, whereupon Caldwell handed him a one dollar bill and asked for his change. After Patrick told Caldwell to come back into the store for the change, Caldwell and Patrick both reentered the store where words were exchanged after Caldwell became impatient for the change. Patrick handed the bill back to Caldwell and called the police. Caldwell got into a car with three companions, and as they backed the car out of their parking space they struck a car which was passing them. While they were stopped and checking the cars for damage, Officer Key arrived and Patrick pointed out Caldwell as the subject about whom he was complaining.
The testimony is conflicting as to whether the police officer or Caldwell fired first, but a dozen or more shots were fired. As Caldwell attempted to flee in a car parked on the lot, a member of the sheriff's staff arrived and fired at Caldwell, striking him in the head.

I.
Argument is made that the state's evidence failed to establish the criminal agency. Careful study of the record, including consideration of the angle of the path of the bullet downward from the upper left shoulder (point of entrance) to the lower back area (point of bullet exit), causes us to conclude that the evidence and reasonable inferences which the jury was justified in drawing from the testimony sufficiently establishes criminal agency. Elliott v. State, 183 So.2d 805 (Miss. 1966), held that criminal agency may be "proven by circumstantial evidence and by reasonable inferences to be drawn from the evidence." Excerpts of the testimony of Elroy Johnson are as follows:
A. The Defendant went around behind a black Ford pickup. And Mr. Key, I guess his gun was empty, got down between the pickup and and (sic) a car and the Defendant jumped up on the hood of the Ford pickup and shot Mr. Key.
Q. Now you saw the Defendant, George Caldwell, fire at Mr. Key?
A. Yes, sir.
Q. All right. Did you see Mr. Key get hit?
A. Yes, sir.
Q. Where was the defendant, George Caldwell, when Mr. Key got hit?
A. He was standing on top of the hood of the pickup.
Mr. Johnson then attempted to demonstrate for the jury the position of the defendant and Key, and continued.
A. Well, Mr. Key was down on his knees between the car and the pickup and the Defendant had his left hand on top of the pickup and shot down like this (demonstrated).
Q. All right. You say Mr. Key was on his knees?
A. He was crouched down between the car and the pickup.
Q. What did Mr. Key do after he was hit, if anything?
A. Well, he, as far as I know, just fell forward, fell down.
Johnson then identified the defendant's gun as that gun which fired the shot he just described. Testimony of the coroner was to the effect that the deceased, Police Officer Key, suffered no gunshot wound other than the fatal one. Upon this record there can be no merit in the argument that criminal agency was not sufficiently established by the evidence and reasonable inferences therefrom.

II.
Next Caldwell argues that the trial court erroneously refused to grant him jury instructions numbered D7, D8, and an unnumbered instruction. Requested instruction *1391 D7 dealt with the shooting by the defendant when he "had reasonable cause to believe and did believe that he was imminent (sic) and immediate danger of being killed by the victim or of receiving great bodily harm at the hands of the victim... ." Failure to grant this instruction does not constitute reversible error because the question of whether Caldwell shot his victim in self-defense was adequately presented by other instructions. The instruction requested is so grammatically ambiguous as to render it incomprehensible to a jury composed of laymen. Furthermore, the instruction is abstract and misleading for failure to advise the jury at what point in the shoot-out the defendant was justified or could be considered justified in taking his adversary's life. Regardless of these features, the instruction is cumulative of other instructions granted. Argument is also made concerning refusal of the court to grant Caldwell his requested instruction D8 and an unnumbered instruction. The unnumbered instruction tells the jury that self-defense is authorized if "there was danger of such design being accomplished." The instruction was improper for failure to state that such danger must be imminent.
Requested instruction D8 was refused by the trial court and such refusal is urged as error. This instruction would authorize the jury to find the defendant guilty of manslaughter. There is no error in this regard because the facts of the case made out a case of either murder or killing in self-defense. Under Vassar v. State, 200 Miss. 412, 27 So.2d 541 (1946), the manslaughter instruction was properly refused. Our judgment is that the sum total of the instructions granted adequately instructed the jury and there is no reversible error pertaining to the instructions when all of them are considered together.

III.
Caldwell was convicted under Mississippi Code Annotated § 97-3-19(2)(a) and § 97-3-21 (Supp. 1976), and the state concedes in its brief that under Jackson v. State, 337 So.2d 1242 (Miss. 1976), mandated by earlier decisions of the United States Supreme Court, Caldwell must be granted a new trial. Because this case involves the death penalty, the new trial shall be bifurcated into the separate phases of guilt-finding and sentence-determination. Jones v. State, 342 So.2d 735 (Miss. 1977); Henderson v. State, 342 So.2d 744 (Miss. 1977); Ivey v. State, 341 So.2d 918 (Miss. 1977).
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and LEE, JJ., concur.