393 A.2d 1122

### COMMONWEALTH of Pennsylvania

v.

### Darryell THOMAS, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 30, 1977.

Decided Oct. 5, 1978.

Reargument Denied Nov. 9, 1978.

314

Lester G. Nauhaus, Paulette Balogh, Asst. Public Defenders, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., Jacqueline M. Verney, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## ORDER OF COURT

PER CURIAM.

This Court is unanimously of the view that the judgment of sentence at No. 56 March Term, 1977, for aggravated assault, should be affirmed.

As to the involuntary manslaughter convictions appealed to No. 27 March Term, 1977, the six members of this Court who have participated in the consideration and decision of this case are equally divided. Mr. Chief Justice EAGEN, Mr. Justice POMEROY and Mr. Justice NIX would affirm the judgments of sentence. Mr. Justice O'BRIEN, Mr. Justice ROBERTS and Mr. Justice MANDERINO would reverse the judgments of sentence and award a new trial. The Court being equally divided, the judgments of sentence at No. 27 March Term, 1977, are also affirmed.

It is so ordered.

POMEROY, J., files an opinion in support of affirmance in which EAGEN, C. J., joins.

NIX, J., files an opinion in support of affirmance.

ROBERTS, J., files an opinion in support of reversal in which O'BRIEN, J., joins.

MANDERINO, J., files an opinion in support of reversal.

PACKEL, Former J., did not participate in the decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE

POMEROY, Justice.

The principal questions in this case are whether there was evidence in the record that would rationally sustain a verdict of involuntary manslaughter and, if not, whether the trial court was required nevertheless to give an involuntary manslaughter instruction to the jury upon the defendant's timely request. For the reasons that follow, I would answer both questions in the negative and affirm all the judgments of sentence.

Joseph Solomon, Arkinzie Solomon, and Leslie Watson were all shot in the chest during a fight in Pittsburgh on September 27, 1975. Arkinzie Solomon and Watson died of their wounds, while Joseph Solomon recovered. Appellant Darryell Thomas was charged, *inter alia,* with two counts

each of murder and voluntary manslaughter and one count of aggravated assault in connection with the incident and was found guilty by a jury of two counts of voluntary manslaughter and aggravated assault.[1] Post-trial motions were filed and denied, and judgments of sentence entered. These appeals followed.[2]

## I.

 It is now settled in prosecutions for criminal homicide under this Commonwealth's Crimes Code[3] that a defendant has the right upon request to an instruction on involuntary manslaughter at least where there is evidence that would rationally sustain such a verdict. *Commonwealth v. Terrell,* 482 Pa. 303, 393 A.2d 1117 (1978) (opinion announcing the judgment of the Court); *Commonwealth v. Ford,* 474 Pa. 480, 378 A.2d 1215 (1977) (opinion announcing the judgment of the Court); *Commonwealth v. Polimeni,* 474 Pa. 430, 378 A.2d 1189 (1977) (opinion announcing the judgment of the Court). As the lead opinion in *Polimeni* stated:

"We thus hold . . . that because the legislature has classified both murder and involuntary manslaughter

---

**1.** Appellant had previously pleaded guilty to a firearms charge in connection with the same incident, and certain other charges were dismissed on the Commonwealth's motion without objection by the defense. Involuntary manslaughter was not charged in the homicide indictment, and a timely request for an instruction to the jury on that charge was refused by the court.

**2.** The voluntary manslaughter convictions were appealed directly to this Court pursuant to Section 202(1) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, 17 P.S. § 211.202(1) (Supp.1978), since superseded by Section 722(1) of the Judicial Code, 42 Pa. C.S. § 722(1) (effective June 28, 1978). An appeal from the aggravated assault conviction was filed in the Superior Court and certified here.

In addition to the questions discussed in this opinion, appellant also argues (1) that the court erred in denying appellant's application to sever the indictment regarding the death of Leslie Watson; (2) that the evidence established self-defense as a matter of law; (3) that the trial court erred in its charge on self-defense by failing to elaborate on the meaning of the duty to retreat "with complete safety." A review of the record shows each of these arguments to be without merit.

**3.** 18 Pa. C.S. §§ 2501–2504, *as amended* (1973 & Supp.1978).

as subdivisions of the major offense of criminal homicide, a defendant who has been charged with murder is entitled on request to have the jury instructed on the elements of involuntary manslaughter at least where evidence is presented at his trial on which a verdict of that less serious offense could rationally be based." 474 Pa. at 442, 378 A.2d at 1196 (footnote omitted).

See also *Commonwealth v. Dussinger,* 478 Pa. 182, 194, 386 A.2d 500, 506 (plurality opinion); *Commonwealth v. Gartner,* 475 Pa. 512, 521, 381 A.2d 114 (1977) (plurality opinion); *Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199 (1977) (plurality opinion).[4] A review of the evidence is thus necessary.

The Commonwealth's evidence showed that Thomas and Joseph Solomon became involved in a fight in a tavern and were ordered to leave by the bartender. Thomas left the bar, followed by Joseph Solomon, his brother Arkinzie Solomon, and others. Kenny Jones, an eyewitness, testified that appellant swung at Joseph Solomon but was unable to land a blow, and that Joseph Solomon then hit Thomas and knocked him to the ground. Appellant then got up, ran across the street to an empty lot, and fired four or five times from about twenty feet away as Joseph Solomon began to advance toward him. Joseph Solomon's testimony was somewhat different. He stated that when he and his brother left the bar, appellant, who was standing on the sidewalk some six feet away, turned around, threw open his coat and started shooting. Joseph Solomon further testified that he was hit twice, once in the chest and once in the belt buckle, and that he thereupon lunged at appellant and tried to get his gun because "I was too close to run away." After a short scuffle in which he could not get the gun, Joseph Solomon turned away when someone shouted to him that his

4. See also *Commonwealth v. Smith,* 474 Pa. 559, 379 A.2d 96 (1977), in which the majority of a 5-member Court held that an involuntary manslaughter charge must always be given at the defendant's request regardless of the evidence (Mr. Chief Justice Eagen and Mr. Justice Nix dissented; former Chief Justice Jones and the present writer did not participate).

brother had been hit; Solomon did not see where Thomas then went. Joseph Solomon said he heard but two shots, and that neither he nor his brother had any knives. The police arrived shortly after the incident; they found no weapons at the scene and no powder burns were found on the clothing of the victims. No Commonwealth witness saw Leslie Watson when he was shot, but the bartender, who was inside the tavern during the episode, stated that immediately after he heard about four shots being fired, Watson entered the bar and fell to the floor, exclaiming that he had been shot.

That this evidence was sufficient to warrant a verdict of guilty of murder or voluntary manslaughter is clear beyond question. In assessing whether an involuntary manslaughter instruction should have been given, however, we must view the evidence in the light most favorable to the appellant. *Commonwealth v. Terrell, supra,* 482 Pa. at 306–308, 393 A.2d at 1119–1120; *Commonwealth v. Polimeni, supra,* 474 Pa. at 443, 378 A.2d at 1196; *Commonwealth v. Moore,* 463 Pa. 317, 321–22, 344 A.2d 850, 852 (1975).

So viewed, the following is a summary of Thomas's testimony: Thomas left the bar and had reached the edge of the sidewalk when Joseph Solomon hit him from behind, knocking him down. As Joseph Solomon continued to hit him on the ground, appellant saw Arkinzie Solomon, about two feet away, advancing on him with a knife. Thomas broke away from Joseph Solomon, got to his feet and tried to get away, keeping his eye on Arkinzie Solomon to the rear, but in so doing ran into a parked automobile. Dazed, he turned around, and saw that Arkinzie Solomon was still advancing on him. "Because the man was coming at me with a knife, and there was no doubt in my mind that he will use it," Thomas drew his pistol and shot him from some five to six feet away. Arkinzie Solomon spun around and went across the street.

Immediately thereafter, Thomas's version continued, Joseph Solomon lunged at appellant with a knife and struck him across the chest with it as Thomas moved away from

the car. Thomas then backed up another five or six feet and shot Joe Solomon, who was hit but kept coming toward him. When Solomon raised his knife, Thomas hit him with his gun in an uppercut motion to the head because "I didn't want to fire on the man again." Joe Solomon stumbled back, and Thomas left the scene. Thomas could remember firing only two shots, one at each of the brothers Solomon; he never saw Leslie Watson, although he did see someone else in the vicinity. Both of the Solomons, according to Thomas, had reputations for violence; in addition, Thomas had seen Joseph Solomon attack others on two prior occasions, and had seen Arkinzie Solomon attack another with a knife.

Appellant contends that this evidence was enough to compel an involuntary manslaughter instruction. I do not agree. Section 2504 of the Crimes Code, 18 Pa. C.S. § 2504 (1973), defines involuntary manslaughter as follows:

"A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

Cases in this Court decided before the Crimes Code was enacted defined involuntary manslaughter as " 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.' " *Commonwealth v. Mayberry,* 290 Pa. 195, 198, 138 A. 686, 687 (1927). This definition, which has been followed by us consistently in pre-Crimes Code cases, *e. g., Commonwealth v. Jones,* 452 Pa. 569, 579, 308 A.2d 598 (1973); *Commonwealth v. Garrison,* 443 Pa. 220, 279 A.2d 750 (1971), was not changed in any substantial way by the Code. Under the Code, as in prior cases, the unlawful act causing death, like the lawful act,

must be committed either recklessly [5] or negligently,[6] and the negligence must be of a higher degree than would suffice to establish liability in a civil case. See *Commonwealth v. Busler*, 445 Pa. 359, 361, 284 A.2d 783, 784 (1971); *Commonwealth v. Aurick*, 342 Pa. 282, 285–90, 19 A.2d 920, 922–24 (1941).

Appellant's testimony was directed to showing self-defense; he claimed that he shot the Solomons from five to six feet away, because they were advancing on him with knives, and that he did not shoot or ever see Leslie Watson. This evidence, if believed, would constitute a complete defense to the homicide charges. Alternatively, the evidence could persuade the jury that appellant killed Arkinzie Solomon and Leslie Watson while believing that his actions were necessary to protect himself from death or serious bodily injury, but that his belief, measured by an objective standard, was unreasonable under the circumstances and that appellant was therefore guilty of voluntary manslaughter. 18 Pa. C.S. §§ 2503(b), 501, 505(b)(2). See, *e. g., Commonwealth v. Walley*, 466 Pa. 363, 353 A.2d 396 (1976); *Commonwealth v. Cropper*, 463 Pa. 529, 345 A.2d 645 (1975); *Commonwealth v. Pride*, 450 Pa. 557, 559–60, 301 A.2d 582, 583–84 (1973). See also *Commonwealth v. Light*, 458 Pa.

**5.** Section 302(b)(3) of the Crimes Code, 18 Pa. C.S. § 302(b)(3), defines "recklessly" as follows:

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."

**6.** Section 302(b)(4) of the Crimes Code, 18 Pa. C.S. § 302(b)(4), defines "negligently" as follows:

"A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation."

328, 333–34, 326 A.2d 288 (1974); *Commonwealth v. Roundtree*, 440 Pa. 199, 204, 269 A.2d 709 (1970).[7]

Nothing in the evidence, however, warranted a finding that appellant's conduct was merely grossly negligent or reckless. To shoot another in the chest from a distance of five to six feet does not, without more, indicate that the risk to human life was merely "substantial," 18 Pa. C.S. § 302(b)(3), or that appellant was unaware of the natural and practically certain consequences of his act. Indeed, appellant's testimony showed that he was aware of the risk to life when he stated that he hit Joseph Solomon with his gun when Solomon lunged at him because "I didn't want to fire on the man again." *Contrast* 18 Pa. C.S. § 302(b)(3), quoted *supra* note 4, *with* 18 Pa. C.S. § 302(b)(2), defining "knowingly" as the state of mind in which the actor is "aware" of the nature of his conduct, *and* 18 Pa. C.S. § 302(b)(1), defining intentional conduct.

It should be emphasized that, unlike other similar cases recently before the Court, this is not a case in which it is contended that a gun was fired accidentally, see *Commonwealth v. Ford, supra*, 474 Pa. at 483–84, 378 A.2d at 1217–18; *Commonwealth v. Garcia, supra*, 474 Pa. at 470, n.2, 378 A.2d at 1210 n.2 (Pomeroy, J., concurring); *Commonwealth v. Dussinger, supra*, 478 Pa. at 193 n.2, 386 A.2d at 506 n.2 (Pomeroy, J., concurring), or a case where it is claimed that a gun was not aimed at the victim. See *Commonwealth v. Terrell, supra*, 482 Pa. at 309–310, 393 A.2d at 1120–1121 & n.7; *Commonwealth v. Polimeni, supra*, 474 Pa. at 445–46 & n.21, 378 A.2d at 1197 & n.21; *Commonwealth v. Gartner, supra*, 475 Pa. at 532 & n.2, 381 A.2d at 124 & n.2 (Pomeroy, J., concurring). Instead, this is a case where a firearm is discharged, assertedly in self-defense but under

7. So far as Leslie Watson's death is concerned, a finding by the jury that he was killed while appellant was attempting to defend himself unreasonably would represent a classic case of transferred intent. *State v. Cates*, 293 N.C. 462, 238 S.E.2d 465 (1977). See *Commonwealth ex rel. McCant v. Rundle*, 418 Pa. 394, 211 A.2d 460 (1965); *Commonwealth v. Lyons*, 283 Pa. 327, 329, 129 A. 86 (1925), and cases cited therein.

circumstances "naturally tending to cause death or serious bodily harm," *Commonwealth v. Mayberry, supra,* and since "any recklessness which might be derived from the record relates only to the accuracy of appellant's aim," *Simon v. United States,* 137 U.S.App.D.C. 308, 310, 424 F.2d 796, 798 (1970), a finding that the defendant was merely negligent or reckless would be irrational. *Commonwealth v. Robinson,* 452 Pa. 316, 305 A.2d 354 (1973); *Commonwealth v. Jones, supra; Commonwealth v. Micuso,* 273 Pa. 474, 117 A. 211 (1922).

## II.

Having concluded that there is in this case no evidence upon which a verdict of involuntary manslaughter could rationally be based, nothing more need be said to justify our order affirming the judgment of sentence. Like the appellants in *Polimeni, supra, Ford, supra* and *Garcia, supra,* the appellant here does not argue that he was entitled to a charge on involuntary manslaughter if there was no evidence to support it. Since appellant does not make this contention, normally it would not be considered. *E. g., Commonwealth v. Daniels,* 480 Pa. 340, 345, 390 A.2d 172, 174 (1978); *Commonwealth v. Santiago,* 476 Pa. 340, 382 A.2d 1200 (1978); *Commonwealth v. Ford,* 472 Pa. 542, 545, 372 A.2d 821 (1977); *Commonwealth v. Carr,* 471 Pa. 86, 369 A.2d 1207 (1977). And for the same reason this Court would not be warranted in reversing the trial court on the theory that the charge was required in any event. *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975). Nevertheless, since the decision in *Commonwealth v. Garcia* was announced subsequent to the argument in the case at bar, and since three of my brethren would reverse in this case for the reasons advanced in the plurality opinion in *Garcia* (which reasons were not advocated by Garcia either in the trial court or in this Court), I feel constrained to address that question here—a question expressly left unresolved in *Polimeni, supra,* 474 Pa. at 436 n.4, 378 A.2d at 1192 n.4, and our subsequent opinions on this subject.

The plurality in *Garcia* were of the view that an involuntary manslaughter instruction is required in every prosecution for criminal homicide because the states of mind necessary for a person to be guilty of murder and voluntary manslaughter necessarily include the less culpable states of mind that characterize involuntary manslaughter. "[T]he evidence would support an involuntary manslaughter verdict whenever it would support a murder or voluntary manslaughter verdict." 474 Pa. at 465, 378 A.2d at 1208. The heart of this reasoning seems to be that since it is always the jury's prerogative to believe all, part or none of the evidence, it may properly find that any killing was committed without the extreme indifference to the value of human life that connotes malice, the hallmark of common law murder, and may conclude that there was only that gross negligence or recklessness which warrants a finding of involuntary manslaughter. *See* 474 Pa. at 460–69, 378 A.2d at 1205–10.

This argument possesses an aura of plausibility, but on examination is faulty for at least two reasons.

In the first place, I cannot accept the premise that the more culpable states of mind must always include the less culpable. There are numerous cases where the manner in which a death is caused simply cannot, without more, support a finding that the killer was unaware that his action entailed an extremely high risk to human life. *E. g., United States v. Hendrix*, 542 F.2d 879 (2d Cir. 1976), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1609, 51 L.Ed.2d 810 (1977) (strangulation); *State v. Steeves*, 279 Minn. 298, 157 N.W.2d 67 (1968) (numerous stab wounds). Such cases, like the one at bar, fall within the class where an accused must be either guilty of a higher grade of criminal homicide than involuntary manslaughter, or not guilty. *See State v. Prewitt*, 104 Ariz. 326, 452 P.2d 500 (1969); *State v. Redfern*, 291 N.C. 319, 230 S.E.2d 152 (1976). This concept is a familiar one in other areas of criminal law. See, *e. g., Commonwealth v. Melnyczenko*, 238 Pa.Super. 203, 207–09, 358 A.2d 98, *allocatur refused*, 238 Pa.Super. xxxvii (1976); *Commonwealth v. Dessus*, 214 Pa.Super. 347, 363–64, 257 A.2d 867, *allocatur refus-*

*ed*, 214 Pa.Super. xl (1969); *United States v. Klugman*, 506 F.2d 1378, 1380–81 (8th Cir. 1974); *United States v. Harary*, 457 F.2d 471 (2d Cir. 1972); *United States v. Markis*, 352 F.2d 860, 865–67 (2d Cir. 1965).[8]

A second basis for my disagreement with the *Garcia* rationale is that the proposition that the jury is entitled to believe all, part, or none of the evidence, while well settled, is not without limits. Followed blindly, this principle would require that the jury be charged on every grade of criminal assault in a homicide case on the chance that the jury might conclude that while the accused's acts harmed the victim, his death came from another source, despite the absence of any evidence that would justify such a conclusion. We have firmly rejected this notion, *Commonwealth v. Comber*, 374 Pa. 570, 97 A.2d 343 (1953), and virtually every jurisdiction has agreed with this limitation on the jury's power by

---

**8.** Section 302(e) of the Crimes Code, 18 Pa. C.S. § 302(e), provides that when "negligence suffices to establish an element of an offense, such element is also established if the person acts intentionally or knowingly." The plurality in *Garcia* asserted that this provision overruled prior Pennsylvania cases which held that proof of an intentional homicide did not, without more, warrant a finding of involuntary manslaughter, and required adoption of the plurality's "greater necessarily includes the lesser" notion. 474 Pa. at 465 & n.15, 378 A.2d at 1207–08 & n.15. In my view, on the contrary, Section 302(e) was never intended to abrogate the settled concept that one may, under the evidence, be either guilty of a higher offense or not guilty of any offense. Model Penal Code § 1.08(5), commentary at 42–43 (Tent. Draft No. 5, 1956). Section 302(e) of the Crimes Code, as I read it, is applicable only in cases where, despite evidence that might warrant a conviction for a higher offense, a prosecutor chooses instead to prosecute for a lesser offense only. *See* American Bar Association Standards for Criminal Justice, Standards Relating to the Prosecution Function § 3.9(b) (Approved Draft, 1972).

It is worth pointing out, additionally, that if the plurality in *Garcia* is correct in its view that involuntary manslaughter is a verdict which is automatically permissible in any criminal homicide prosecution, it follows that the offense must be submitted to the jury at the prosecution's request, even if the defendant objects. Since there may well be cases where a defendant, viewing the prosecution's evidence of a higher offense as weak, decides to avoid any compromise verdict by placing in the jury's hands a choice between guilty and not guilty verdicts on a higher offense only, see, *e. g., Commonwealth v. Goldblum*, 126 P.L.J. 227, 237–38 (1978), the *Garcia* rationale would deprive the defense of this strategy.

holding that an involuntary manslaughter instruction is to be given only if there is a rational basis in the evidence for that verdict. See, *e. g., United States v. Hendrix, supra; Simon v. United States, supra; State v. Sorensen,* 104 Ariz. 503, 455 P.2d 981 (1969); *Cook v. State,* 248 Ark. 332, 451 S.W.2d 473 (1970); *People v. Gordon,* 10 Cal.3d 460, 110 Cal.Rptr. 906, 516 P.2d 298 (1973); *People v. Miller,* 187 Colo. 239, 529 P.2d 648 (1974); *Hallowell v. State,* —— Del. ——, 298 A.2d 330 (1972), *cert. denied,* 411 U.S. 951, 93 S.Ct. 1940, 36 L.Ed.2d 413 (1973); *Powell v. State,* 130 Ga.App. 588, 203 S.E.2d 893 (1974); *People v. Goodpaster,* 35 Ill.2d 478, 221 N.E.2d 251 (1966), *cert. denied,* 386 U.S. 967, 87 S.Ct. 1051, 18 L.Ed.2d 120 (1967); *State v. Millspaugh,* —— Iowa ——, 257 N.W.2d 513 (1977); *State v. Wilson,* 215 Kan. 437, 524 P.2d 224 (1974); *Coleman v. Commonwealth,* 501 S.W.2d 583 (Ky.1973); *State v. Inman,* 350 A.2d 582 (Me.1976); *Commonwealth v. Clark,* 363 Mass. 467, 295 N.E.2d 163 (1973); *State v. Steeves, supra; Caldwell v. State,* 347 So.2d 1389 (Miss.1977); *State v. Walker,* 197 Neb. 314, 248 N.W.2d 759 (1976); *State v. Redfern, supra; Nichols v. Helgemoe,* N.H., 369 A.2d 614 (1977); *State v. Artis,* 57 N.J. 24, 269 A.2d 1 (1970); *State v. Gardner,* 85 N.M. 104, 509 P.2d 871 (1969); *People v. Mussenden,* 308 N.Y. 558, 127 N.E.2d 551 (1955); *State v. Nolton,* 19 Ohio St.2d 133, 249 N.E.2d 797 (1969); *Thompson v. State,* 507 P.2d 1271 (Okl.Cr.1973); *State v. Thayer,* 32 Or.App. 193, 573 P.2d 758 (1978); *State v. Infantolio,* 116 R.I. 303, 355 A.2d 722 (1976); *State v. Watts,* 249 S.C. 80, 152 S.E.2d 684 (1967); *State v. Mellon,* —— Tenn. ——, 557 S.W.2d 497 (1977); *Brooks v. State,* 548 S.W.2d 680 (Tex.Cr.App.1977); *State v. Pierre,* —— Utah 2d ——, 572 P.2d 1338 (1977); *Thacker v. Commonwealth,* 207 Va. 962, 154 S.E.2d 130 (1967) (voluntary manslaughter); *Garcia v. State,* 73 Wis.2d 174, 242 N.W.2d 919 (1976).[9]

**9.** The only exception to this rule which my research has disclosed is in Florida, and there the submission of an involuntary manslaughter instruction in the absence of any evidence to support that verdict appears to be required by statute. See *Robinson v. State,* 338 So.2d 1309 (Fla.App.1976).

A requirement that an included offense be submitted to the jury only if a conviction for that offense would have a basis in the

■■■■ A requirement that there be a rational basis for an involuntary manslaughter verdict and instruction must, of course, leave the choice between rational verdicts to the jury, recognizing that the weight and credibility of the evidence are matters exclusively within the jury's province, and that the jury is not bound by either side's theory of the case, but may find from the evidence that the true situation was something different. *E. g., Commonwealth v. Cooney,* 431 Pa. 153, 157, 244 A.2d 651 (1968); *Commonwealth v. Flax,* 331 Pa. 145, 152–54, 200 A. 632 (1938); *Commonwealth v. Colandro,* 231 Pa. 343, 350, 80 A. 571 (1911). A reconciliation of the jury's prerogatives and the necessity that the verdict conform to a rational interpretation of the evidence is properly made, I suggest, by a requirement that the lesser offense of involuntary manslaughter be submitted, with appropriate instructions, to the jury as a permissible verdict when there is some conflict in the evidence which would warrant finding the defendant innocent of a higher degree of criminal homicide but guilty of involuntary manslaughter. See, *e. g., Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 13 L.Ed.2d 882, 887–88 (1965); *United States v.*

evidence is consistent with Section 1.07(5) of the Model Penal Code, and adds an additional restriction not present in the Code. Although the Code would permit the trial court to submit a lesser offense despite a lack of basis in the evidence, I would take away the discretion proposed by the Code and forbid the submission of such an offense if there is no rational basis for a verdict on that charge. This avoids the vice of permitting a trial judge's standardless discretion to determine whether the offense shall be submitted, a practice condemned as unconstitutional with respect to voluntary manslaughter in *United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3d Cir. 1974) (en banc), *cert. denied,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). See also, *e. g., Commonwealth v. Matthews,* 446 Pa. 65, 78, 285 A.2d 510, 516 (Pomeroy, J., dissenting, joined by Roberts, J.); *Commonwealth v. Banks,* 447 Pa. 356, 364, 285 A.2d 506, 509 (1971) (Pomeroy, J., dissenting, joined by Roberts, J.); *Commonwealth v. Davis,* 449 Pa. 468, 479, 297 A.2d 817, 818 (opinion of Pomeroy, J., joined by Roberts and Manderino, JJ., in opposition to order). As noted in *Polimeni, supra,* 474 Pa. at 436–37 n.4, 378 A.2d at 1192–93 n.4, and *Commonwealth v. Moore, supra* 463 Pa. at 338–39, 344 A.2d at 861 (Pomeroy, J., concurring), there is no reason to extend the historical anomaly that permits a jury to return a voluntary manslaughter verdict, regardless of the evidence, to include involuntary manslaughter.

*Harary, supra; Commonwealth v. Moore,* 463 Pa. 317, 338, 344 A.2d 850, 861 (1975) (Pomeroy, J., concurring); *Commonwealth v. Wilds,* 240 Pa.Super. 278, 287–90, 362 A.2d 273 (1976). It is not necessary, of course, that the defense come forward with any evidence of its own in order to create this sort of conflict. It may develop by cross-examination, by disparities in the Commonwealth's case,[10] or from equally plausible interpretations of ambiguous evidence submitted by the prosecution.[11] Moreover, the assertion of an affirmative defense does not necessarily preclude consideration by the jury of involuntary manslaughter;[12] each case must turn on the record developed at trial.[13]

**10.** *E. g., Commonwealth v. Dussinger, supra,* in which part of the Commonwealth's case tended clearly to show that the defendant was part of a felony murder scheme, while appellant's statement to the police, introduced in evidence by the Commonwealth, showed that the defendant did not know that she was part of any robbery and that the gun she fired into the victim went off accidentally.

**11.** *E. g., United States v. Comer,* 137 U.S.App.D.C. 214, 421 F.2d 1149 (1970) (single stab wound of the thigh which caused death was not such compelling evidence of malice as to make irrational an inference of lack of malice and therefore a verdict of guilty of involuntary manslaughter); *Driscoll v. United States,* 356 F.2d 324, 328–29 (1st Cir. 1966) (circumstantial evidence of willfulness in violation of wagering tax statute could rationally be interpreted either way); *State v. Osburn,* 52 Ohio App.2d 146, 368 N.E.2d 849 (1976) (evidence could support findings of murder or involuntary manslaughter).

**12.** See, *e. g., Commonwealth v. Dussinger, supra* (alibi asserted, but prosecution's evidence could warrant a finding of involuntary manslaughter); *Commonwealth v. Polimeni, supra,* and *State v. Osburn, supra* note 11 (self-defense asserted but evidence would also support finding of involuntary manslaughter). Compare *People v. Rhinehart,* 9 Cal.3d 139, 507 P.2d 642, 107 Cal.Rptr. 34, 507 P.2d 642 (1973) and *State v. Jones,* 291 N.C. 681, 231 S.E.2d 252 (1977) (evidence could not sustain finding of involuntary manslaughter and sole defense offered is alibi); *State v. Burrow,* 221 Kan. 754, 561 P.2d 864 (1977) (nothing in evidence warranted finding of involuntary manslaughter and defense contended that someone else committed the killing).

**13.** It was asserted in *Garcia* that to require the court to determine whether the evidence could rationally support an involuntary manslaughter verdict calls upon the court to weigh the evidence, which function is the sole province of the jury. 474 Pa. at 468 & n.16, 378 A.2d at 1209 & n.16. This contention is manifestly wrong. A determination of whether the evidence can rationally support a

In conclusion, as noted in part I of this opinion, there was a decided conflict in the testimony concerning the actions of Thomas and the Solomon brothers at the time of the shootings. From the evidence the jury could properly have acquitted appellant or found him guilty of any of the degrees of murder or of voluntary manslaughter. But no conflict or rational inference from any part of the evidence could sustain a finding that appellant was guilty of involuntary manslaughter. Accordingly, the trial judge did not err in refusing to submit that offense to the jury for its consideration.[14]

For the foregoing reasons, I would affirm all the judgments of sentence.

EAGEN, C. J., joins in this opinion.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

■ Unlike its companion case, *Commonwealth v. Terrell*, 482 Pa. 303, 393 A.2d 1117 (1978), in which the disputed fact was whether the killing was reckless, there is no similar disputed fact here; therefore, I do not believe that the instruction on involuntary manslaughter is necessitated under the facts of this case. *See Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977) (Nix, J., dissenting); *Commonwealth v. Moore*, 463 Pa. 317, 344 A.2d 850 (1975) (Nix, J., dissenting).

finding involves no weighing of the evidence. Rather, the test is whether, viewing the evidence in the light most favorable to the defendant and resolving all questions of weight and credibility in his favor, a conclusion that the defendant's acts were non-malicious and unintentional can be sustained. The defendant is given the full benefit of the record as it stands, and it is for the jury to decide, after weighing the evidence and resolving all questions of credibility, whether an involuntary manslaughter verdict should be returned.

14. The question of whether involuntary manslaughter was a permissible verdict in this case has no bearing on appellant's convictions for aggravated assault and the weapons offense. *Commonwealth v. Terrell, supra,* 482 Pa. at 310, 393 A.2d at 1121.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

The majority opinion in *Commonwealth v. Smith*, 474 Pa. 559, 379 A.2d 96 (1977), held that in every prosecution for criminal homicide under the Crimes Code, the defendant, upon request, is entitled to a jury instruction on involuntary manslaughter. Here appellant was denied his timely request for an instruction on involuntary manslaughter. For the reasons stated in *Smith* and in *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977) (Opinion of Roberts, J., joined by O'Brien, J. and Manderino, J., announcing the judgment of the court), appellant was entitled to the requested charge. See also *Commonwealth v. Dussinger*, 478 Pa. 182, 386 A.2d 500 (1978); *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977) (Concurring opinion by Roberts, J., joined by O'Brien, J.); *Commonwealth v. Ford*, 474 Pa. 480, 378 A.2d 1215 (1977) (Concurring opinion by Roberts, J., joined by O'Brien, J.).

I therefore would reverse judgment of sentence in No. 27 (voluntary manslaughter) and grant a new trial. I would affirm judgment of sentence in No. 56.*

O'BRIEN, J., joins in this Opinion.

## OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

For the reasons expressed in my concurring opinion in *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977), and in my concurring opinion in *Commonwealth v. Terrell*, 482 Pa. 303, 393 A.2d 1117 (1978). I dissent.

* The trial court's denial of appellant's requested instruction on involuntary manslaughter does not require reversal of his conviction of aggravated assault. See *Commonwealth v. Smith*, 474 Pa. 559, 379 A.2d 96 (1977).