# 𝔑𝔦𝔠𝔥𝔪𝔬𝔫𝔡

### LESTER SLADE v. COMMONWEALTH.

January 15, 1931.

Present, Prentis, C. J., and Campbell, Holt, Hudgins and Gregory, JJ.

1100

*John N. Sebrell* and *N. T. Green,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Lester Slade was tried upon an indictment which contained two counts. The first count charged him with

feloniously manufacturing distilled ardent spirits. The second count charged him with aiding and abetting in the manufacture of ardent spirits. The trial resulted in a verdict of guilty, and his punishment was fixed at eighteen months in the penitentiary. Sentence was pronounced against him.

The case is here for review upon three assignments of error. Briefly they are as follows:

First: That the jury which tried the case was not fair and impartial.

Second: That witness Bass, introduced by the Commonwealth, was permitted, over the objection of counsel for the accused, to testify regarding certain statements made by him to the officers out of the presence of the accused.

Third: That during the course of the trial the trial judge made improper and prejudicial remarks in the presence of the jury which materially influenced the jury in their consideration of the case.

The facts are brief. It appears that in the month of September, 1929, several officers discovered a large still in operation. The men who were operating the still were placed under arrest. Clarence Bass was one of the men found operating the still. The officers reached the still and captured it in the morning between ten and eleven o'clock. They remained close by during the remainder of the day and on into the early hours of the next day. Some time between one and two o'clock the next morning, a truck was driven up loaded with sugar, meal, coal, yeast and five gallon jugs. The driver of the truck was arrested some 200 or 300 yards from the site of the still, and the officers, who made the arrest, drove with him to the place where the still had been in operation. Within a few minutes a Ford roadster was driven up to where the still had been located and in this roadster were three men, the accused Lester Slade, one Trotman and another man who escaped.

Slade and Trotman were arrested. Clarence Bass, who had been previously convicted for operating the still was introduced by the Commonwealth and testified that he had been employed by the accused and Trotman at $50.00 per week to work for them at this still and that they owned it.

The accused does not assign as error the refusal of the court to set aside the verdict as contrary to the evidence. The evidence is ample to sustain the conviction and it must be sustained unless there is error in the incidents of the trial.

The first assignment of error grows out of these facts: At the same term of the court at which the accused was convicted, but on a prior day thereof, Clarence Bass, one of the operators of the still, was tried upon an indictment for manufacturing ardent spirits and was convicted. In the Bass trial, the same witnesses testified as testified in the trial of the accused. The still involved in the Bass trial is the same still that is involved in this case. When the present case was called for trial, the jurors were examined, and it developed that five of them had been members of the jury which convicted Bass. The accused moved to exclude these five jurors from the panel because they had been members of the jury which tried Bass and it was claimed that by their verdict of conviction in the Bass case it necessarily followed that they had opinions in regard to the innocence or guilt of the accused and that they were therefore not competent to serve as jurors in the case. The court examined the jurors on their *voir dire* and ascertained that they could give the accused a fair and impartial trial; that they had no fixed opinion about his guilt or innocence, and that they would not be influenced by anything which occurred in the Bass trial.

The trial court then overruled the motion to exclude the jurors and gave as its reason the following:

"I would not hesitate to say, if it was a question whether or not there was a distillery down there and that had been gone into, and that was the issue, I think your position would be well taken. There is no doubt but a distillery was there, and nobody will deny it, but the question is whether this man was connected with it. It has nothing to do with whether Bass was connected with it, but this particular man * * *."

The sole issue in the *Bass Case* was whether Bass was one of the operators of the still. The sole issue in the present case was whether the accused had any interest in the still or connection with it. The issues in the two cases were different.

Counsel for the accused rely upon several cases from other jurisdictions to support their contention that the jurors who had tried Bass were incompetent to try the accused, but after a careful review of those cases it is readily seen that they were cases arising under facts and circumstances entirely different from the facts and circumstances in the present case. In those cases, the facts in the prior and subsequent cases were identical, or they involved joint crimes under joint indictments, or in the trial of the first offender the facts shown necessarily connected the second offender with the same crime and necessarily caused the jurors to have some opinion as to the guilt of the offender subsequently tried or the connection of both offenders with the crime was disclosed in the first trial.

In the present case Bass and the accused were separately indicted. The name of the accused was not mentioned in the Bass trial. His connection with the still was not disclosed to the jury in that trial. The circumstances surrounding the arrest of Bass and the accused were different. The jury in the Bass trial could not, from the evidence, have formed any opinion as to the guilt or innocence of the accused because no inquiry was made as to his connec-

tion with the still. The connection of Bass with the still was entirely different from the connection of the accused. Bass was an employee and operator while the accused was the owner. The case depended upon different facts. The only similarity in the two cases is that the same still was involved. The credibility of Bass as a witness was not passed upon by the jury in the trial of his case because he did not testify in his own behalf. That trial, in no way, involved the guilt or innocence of the accused.

Several cases on this subject may be found in a note in 4 *Ann. Cas.* page 965.

In 16 R. C. L. section 78, page 260, this statement is found: "Where the issues are different and the same question of law is not involved in both cases a juror is not rendered incompetent by reason of prior service, although the cases may be similar; and this is also held to be the rule in cases where the transactions are connected." And continuing in the same paragraph this authority has this statement: "By the weight of authority, it is held, however, that where there are separate trials of persons jointly indicted it is not good ground for the challenge of jurors impanelled to try one of the defendants that they have already served on a jury which has tried and found guilty another of the defendants."

The accused and Bass were indicted separately and the record discloses that the prospective jurors were sworn before the trial began and the judge of the trial court asked the five members of the jury, who had participated in the Bass trial, if anything they had heard in the Bass trial would influence them in reaching a conclusion regarding the guilt or innocence of the accused and those jurors replied: "No, sir." The judge of the trial court, pursuing the inquiry further, asked them if there was anything they had heard or recollected in the Bass trial which would affect them in deciding the case, and if there was any reason

why they could not try this case just as independently and just as fairly as if they had not taken part in the Bass case and they responded: "No, sir."

Where the issue is the same in both cases it is, of course, but fair to the accused, who is being tried, to have a panel free of any jurors who participated in the first trial, but in this case the fact that a still had been found was proven beyond doubt. It was never denied or controverted. The only question was the connection of the accused with it. If the jurors had a definite fixed belief that a still had been found, this alone would not disqualify them, provided they did not have a fixed opinion about the accused's connection. The circumstances surrounding the existence and operation of the still may have been such as to leave no doubt that liquor was being manufactured, but the belief that such an offense was being committed would not in itself disqualify one from serving on a jury, if he had no opinion that the accused was the guilty party.

It is the duty of the trial court through the legal machinery provided for that purpose to procure an impartial jury to try every case. A juror who is influenced by his bias or prejudice or who has a fixed opinion about the case is not a competent juror. The issue of who is, or is not, a competent juror is one for the trial court to decide, and in making its decision the court may exercise a reasonable discretion. Ordinarily, if that discretion has not been abused the trial court's decision on that matter is final.

The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already.

The finding of a trial court that a juror is competent after an examination on his *voir dire* ought not to be set aside unless it is plainly manifest that an error has been committed. The candor, interest, fairness, prejudice and

bias of a juror are elements for the consideration of the trial judge in determining a juror's competency, and only when the juror's examination shows conclusively that he has a disqualifying opinion should the appellate court reverse the decision of the trial court.

The second assignment is based on the claim that certain statements made by Bass and to which he was allowed to testify were hearsay evidence and should have been excluded. It was developed in this way: The attorney for the accused, after a severe cross-examination of the witness, Bass, tried in vain to discredit him and have him tell the jury that he (Bass) had been offered some inducement or leniency by Burgess, a Federal revenue officer, if he would testify against the accused. The desired result was not obtained, for Bass, in answer to the numerous interrogations along this line, stoutly maintained that he had been offered nothing. Then when Bass was examined on his redirect examination along this line he testified that he had told Burgess on the night of his arrest that other parties (without naming them) would come to the still that night and that the truck would be driven there loaded with material and that the car would follow. This statement was verified by what later did occur.

■ Of course statements made by a witness to a third party out of the presence of the accused are not admissible. There are two reasons, however, why the statements in question do not constitute reversible error, first, the statements were immaterial and harmless and did not, in any way, connect the accused. The statement of Bass to the officer that other unnamed parties would go to the still later in the night could not possibly have prejudiced the interest of the accused nor misled the jury. The second reason is, that the objectionable statement was prompted and brought about by the cross-examination of Bass by the counsel for the accused and he cannot now complain.

██. It is also contended that the Commonwealth was seeking, through this testimony, to corroborate Bass, who it was claimed was an accomplice. The court gave an instruction cautioning the jury to scan the testimony of an accomplice with care and caution and warned the jury against the danger of convicting upon the uncorroborated testimony of an accomplice. The jury was instructed that the corroboration should come from a source other than the accomplice. This instruction, which was very liberal to the accused, clearly stated the law and threw around the accused the legal safeguard to which he was entitled. The jury was specifically instructed that the corroboration must come from a source other than the accomplice and we must assume that the jury followed the instruction as there was other corroborating evidence.

The third assignment of error grows out of the cross-examination of witness Bass by counsel for the accused, and the remarks of the trial judge made in the presence of the jury. When counsel for the accused was objecting to the introduction of certain testimony, which was being given by Bass, the trial judge said to counsel: "You are trying to reconvict him. That is what you are doing." It is contended that this remark indicated to the jury the opinion of the trial judge on the credibility of the witness, Bass, and also that it indicated his bias.

Again when Bass was being cross-examined by counsel for the accused:

"How many times have you been convicted for manufacturing liquor and violating the prohibition law?

"Answer: Several times.

"Question: Several times?

"Answer: Yes, sir. I am telling the truth.

"Question: You know I know that, and you have to tell the truth about it.

"The court: That is not quite fair, Mr. Sebrell. You are not on the witness stand, and don't take advantage of it.

"Mr. Sebrell: I am cross-examining him, and I want to except to the remarks of the court.

"The court: I want to say that it is not proper to tell the witness that he is telling the truth because counsel knows it.

"Mr. Sebrell: We have the record.

"The court: (Interposing) You haven't got it.

"Mr. Sebrell: But your Honor don't know whether I have the record or not, but I have the right to cross-examine.

"The Court: You haven't the right to cross-examine him on a statement of that kind, and I so rule."

██ ██ A trial judge should carefully avoid making remarks in the presence of the jury which would cause the jury to ascertain his opinion of the force and effect of any evidence offered in a case. However, we do not think that the jury could have, from the remarks of the trial judge in this case, concluded that he was giving the testimony of Bass force and effect, or that he was disclosing any opinion on the credibility of this witness. If the language of the judge had any effect, it appears to us that it rather constituted a reprimand of counsel for his manner of cross-examining the witness and we are unable to see how that in any way prejudiced the accused.

██ In the cross-examination it clearly appears that counsel was attacking the credibility of witness Bass. He was impressing upon Bass the fact that he knew that Bass had been previously convicted of violating the prohibition law, and that Bass, being conscious of the fact that counsel did know of the previous violations, was telling the truth about it, only because counsel was in position to prove him a falsifier if he did not tell the truth. It was unfair cross-examination. Nothing had taken place in the trial which justified an attack on the veracity of the witness and when it was made, the trial judge was justified in protecting him.

 The purpose of cross-examination is to bring out the truth and it necessarily must be left largely to the discretion of the trial judge. There are proper limits to cross-examination. When the Commonwealth offers witnesses in the trial of criminal cases, they are entitled to the protection of the court from improper insinuations against their character.

We cannot, in any view of the case, see how the accused was prejudiced by these incidents in the trial of this case.

The judgment of the lower court is affirmed.

*Affirmed.*