## Richmond

RUSSELL E. FARRAR v. COMMONWEALTH OF VIRGINIA.

June 22, 1959.

Record No. 4916.

Present, All the Justices.

The opinion states the case.

*Paul Whitehead* and *Harold B. Singleton* (*J. Frank Shepherd; Shrader & Singleton; Edmunds, Whitehead, Baldwin & Graves,* on brief), for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General* (*A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

Russell E. Farrar was indicted under § 18-98, Code 1950,[1] for committing a crime against nature, by voluntarily submitting to carnal knowledge of his body by Alfred W. Howard by way of the latter's mouth. Howard, indicted under the same statute, was convicted by a jury on January 10, 1958 and sentenced to serve eighteen months in the penitentiary. On January 14, 1958 a jury trial was had for Farrar and he was found guilty as charged in the indictment on conflicting evidence and sentenced to confinement in the penitentiary for one year. We granted him a writ of error from the judgment entered on the verdict.

In his assignments of error, Farrar alleged that the court erred (1) by permitting eight jurors to serve who were on the *venire* called in the case against Howard; (2) by refusing a view of the premises where the alleged criminal act occurred; (3) by giving instruction No. 1 as offered by the Commonwealth, and (4) by refusing to set aside the verdict on the ground there was not sufficient credible evidence to support a verdict for conviction.

Prior to the January 1958 term of the court a *venire* of twenty-four names was drawn by lot from the jury box for the trial of cases during that term. A writ of *venire facias* was issued by the clerk directing the city sergeant to summon twenty of the twenty-four names from the list furnished him. Accordingly, twenty persons were summoned and they were in attendance. They tried cases on the docket including the indictment against Howard. All jurors were present in the courtroom on January 10, 1958 when Howard was arraigned and pleaded. Twelve jurors were regularly selected for the trial. The eight jurors stricken from the panel of twenty were excused and excluded from the courtroom along with all other persons not needed for the trial. They did not hear the evidence adduced. Counsel for Farrar had requested a separate trial with a different jury. The sergeant was directed to summon twelve additional jurors from a list of sixteen jurors drawn from the jury box. These twelve jurors and the eight jurors who were struck from the panel of twenty in the Howard trial were in attendance for the trial of Farrar on January 14, 1958.

Before court convened on that day, counsel for Farrar and the

---

[1] Sec. 18-98. "*Crimes against nature.*—If any person shall carnally know in any manner any brute animal, or carnally know any male or female person by the anus or by or with the mouth, or voluntarily submit to such carnal knowledge, he or she shall be guilty of a felony and shall be confined in the penitentiary not less than one nor more than three years."

Commonwealth Attorney appeared in the judge's chambers by a prearranged appointment. There counsel for Farrar moved to quash the *venire* of eight members of a jury who were struck in the Howard trial, on the grounds that they were present when Howard was arraigned and pleaded; that they saw Howard; that the results of his trial had been published in local newspapers, and they would be biased or prejudiced against Farrar thereby depriving him of a fair and impartial trial.

Counsel for Farrar filed as exhibits copies of the newspapers in which the above articles were published. In the Lynchburg News, published on January 11, 1958, there was an article on an inside page headed: "Two men given prison terms" and it contained a paragraph which read: "Alfred W. Howard, 30-year old Negro, 1002 Fifth St., indicted on a sodomy charge, was sentenced to 18 months in prison." The next paragraph stated: "Russell Earl Farrar, 54, Rt. 2, Madison Heights, was indicted along with Howard on the offense. His trial was set for Jan. 14." On the same day the Daily Advance published substantially the same account of the cases on an inside page. The court in overruling the motion concluded that in the absence of evidence that any of the eight jurors were prejudiced against Farrar, it should be determined by examination upon their *voir dire*. Counsel for Farrar excepted to the court's ruling for the reasons stated, and the twenty jurors were seated in the box, after which eight were struck and the trial proceeded.

Section 19-179, Code 1950, provides:

"In any case of felony when a sufficient number of jurors to constitute a panel of twenty free from exception cannot be had from those summoned and in attendance, or when the venire facias or panel has been quashed for any cause, the court shall select from the names on the list provided for by §§ 8-182 and 8-184, the names of, and cause to be summoned, so many persons as may be deemed necessary to obtain a panel of twenty free from exception; and, if for any reason the list be found to have been unlawfully, illegally or improperly prepared, the court shall select from the persons who were eligible to have been placed on the list, and cause to be summoned, so many persons as may be deemed necessary to obtain a panel of twenty, free from exception, and the venire thus summoned, in either such event, may be used for the trial of all criminal cases to be tried at that term, both felonies and misdemeanors, in the same

manner as if the venire had been obtained according to the provisions of §§ 19-171 to 19-177."

The record indicates that the additional sixteen jurors, from which twelve were summoned, were drawn from the jury box, whereas § 19-179, *supra*, requires the court to select so many persons deemed necessary to obtain a panel of twenty free from exception from the list provided for by §§ 8-182 and 8-184. Farrar made no objection to the manner in which these jurors were obtained; therefore, such irregularity will be disregarded. (§ 19-176, Code 1950) His objection is to the court's refusal to quash the *venire* of eight, and since the objection was offered before the jury was sworn it was timely made.

Section 19-182, Code 1950, reads in part:

"In every case of a felony there shall be selected from the persons summoned, as aforesaid, a panel of twenty persons, free from exception, from which panel the Commonwealth may strike four and the accused four, and the remaining twelve shall constitute the jury for the trial of the accused. * * *"

Counsel for Farrar maintain twenty persons, free from exception, were not made available for the trial. In support of that contention they argue in their brief:

"In this case there were only twelve on the panel free from exception; the other eight were tainted by the fact that they had seen Howard, heard him plead, were sworn on their *voir dire* in the Howard case, were told to get out after they had been stricken off. The eight members of the Howard jury heard the indictment against Howard read; Farrar's name was mentioned therein. They were only human. Naturally they read the papers showing Howard's conviction and stating that Farrar would be tried the next Tuesday. This knowledge is bound to have affected their subconscious minds and is bound to have prejudiced them against Farrar."

Courts are zealous in protecting one's constitutional right of a trial by an impartial jury, and as stated in 11 M. J., Jury, § 37, p. 513: "* * * As far as practicable the courts in the selection of jurors should endeavor to secure those who are not only free from but who are not even subject to any well-grounded suspicion of any bias or prejudice. * * *"

In the case at bar it can be said that the eight *veniremen* had such an association with Howard's case that it may be reasonably inferred that bias on their part operated in the trial of Farrar, especially in

view of the nature of the crime alleged. Moreover, where two or more felons are indicted separately for the same offense, committed while acting in concert and they ask for separate trials and different juries we think by granting the motion and excusing any jurors who were among the panel of twenty summoned to try one of the accused in a former trial, doubt will be cast aside that they were not impartial jurors or free from bias or prejudice. Under the circumstances, the refusal of the court to grant Farrar's motion to quash the *venire* of eight made before the jury was sworn constituted error.

As the case will be reversed and remanded for a new trial for the stated reason, we do not consider it necessary to discuss the other assignments of error.

*Reversed and remanded.*

BUCHANAN, J., dissenting:

It is to be remembered that the eight jurors for whose presence on the panel this case is being reversed were not in the courtroom and heard none of the evidence on the trial of Howard.

In response to the motion of the defendant to quash the *venire facias* with respect to these eight jurors, the court made this highly pertinent statement:

"* * * the question of whether any of the panel in this case has made up or formed any opinion of the guilt of the accused or is in any way biased or prejudiced, either from the newspaper accounts or any other way, will have to be determined in the examination of those jurors upon their voir dire. The mere suggestion by counsel that he feels that there may be some prejudice arising from newspaper accounts or from the fact that the eight persons stricken as jurors in the trial of the case against Howard and in the absence of any evidence that there is any prejudice by any of them against the accused, does not warrant this Court in assuming that any such prejudice exists. * *."

The "mere suggestion by counsel" based on the fact that these jurors were in the courtroom and saw Howard when he was arraigned and pleaded and that the result of his trial had been in the newspapers, was all that was ever offered in support of the motion. There was no evidence even that they saw what was in the newspapers and none that they were biased or prejudiced from any source or in any manner.

It is to be presumed that these eight jurors were properly examined on their *voir dire* to ascertain that they were in fact free from any bias or prejudice or improper influence of any kind, and that they could give the defendant a fair and impartial trial. The court's order affirmatively shows that the jury were "duly summoned, selected, tried and sworn according to law."

To hold as the majority opinion does that "it may be reasonably inferred" that bias existed on the part of these jurors is exactly the opposite of what we have repeatedly held to be the proper inference.

In *Slade* v. *Commonwealth*, 155 Va. 1099, 1106, 156 S. E. 388, 391, we said:

"The finding of a trial court that a juror is competent after an examination on his *voir dire* ought not to be set aside unless it is plainly manifest that an error has been committed. The candor, interest, fairness, prejudice and bias of a juror are elements for the consideration of the trial judge in determining a juror's competency, and only when the juror's examination shows conclusively that he has a disqualifying opinion should the appellate court reverse the decision of the trial court."

The same principle was stated and applied in *Ballard* v. *Commonwealth*, 156 Va. 980, 159 S. E. 222; and in *Abdell* v. *Commonwealth*, 173 Va. 458, 2 S. E. 2d 293.

Again in *Hevener* v. *Commonwealth*, 189 Va. 802, 811, 54 S. E. 2d 893, 898, the above statement in *Slade* v. *Commonwealth*, was quoted and approved; and it was reiterated that:

"* * The issue of whether a member of the venire is a proper juror is for the trial court. Its decision on that issue is to be accorded weight. Better than anyone else, it can gauge the candor of the juror and his purpose to give a fair judgment on the evidence. * *."

In the complete absence of any evidence of any bias or prejudice or pre-existing opinion on the part of these jurors, we ought to adhere to the fair and sensible rule followed in these previous cases and not reverse this case on an inference, as the opinion calls it, that these jurors were biased and prejudiced. Inferences drawn by courts, no less than those drawn by juries, should be based on evidence, and the qualifications of jurors should be determined by fact rather than fancy.