# Richmond

JUNIOR GLATEN THACKER v. COMMONWEALTH OF VIRGINIA.

April 24, 1967.

Record No. 6501.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Gordon, JJ.

*Charles B. Mann* for the plaintiff in error.

*D. Gardiner Tyler*, *Assistant Attorney General* (*Robert Y. Button*, *Attorney General*, on brief), for the Commonwealth.

GORDON, J., delivered the opinion of the court.

██ Junior Glaten Thacker was indicted for the murder of Charlotte Tate, also known as Charlotte Tate Haq. Thacker pleaded not guilty. The jury found him guilty of first degree murder and, in accordance with the verdict, the court sentenced him to 99 years in the penitentiary. Thacker now appeals from the conviction order.

Thacker and Charlotte Tate had been engaged to be married. In December 1964, however, Charlotte told him she "did not love him any more", and attempted to give him back the engagement ring, which he refused to accept. In February 1965 Charlotte was secretly married to Jamsched Haq, an intern at the Petersburg General Hospital where Charlotte was a student-nurse.

On the morning of April 2, 1965, Thacker went to the main entrance of the Petersburg General Hospital where he waited for about an hour and a half. Then he asked a guard when the cafeteria would be opened and, being told it would open in about two minutes, he went to the cafeteria. He found Charlotte there and said "something" to her. She ran into the hall, and Thacker followed her with a pistol in his hand. He shot Charlotte once in the back and, while holding her, shot her twice in the face. She died from the wounds.

The Commonwealth proved the willful, deliberate and premeditated killing. The only defense presented at the trial was insanity, which the jury rejected by its verdict.

Thacker's present counsel, who was appointed to prosecute this appeal, presses two points. He contends that Thacker was prejudiced because the jury heard Thacker's objections immediately before his trial "as to the competency of his defense counsel" and was therefore denied due process and equal protection of the law. Secondly, he complains of the court's refusal to grant certain instructions.

The first point relates to a colloquy among the trial judge, Thacker and Thacker's counsel. This colloquy took place after the veniremen's names had been called, the reporter sworn, the indictment read and Thacker had entered a plea of not guilty.

"The Court: (To defendant) Stand up. Mr. Sidney Barney was appointed by the Court as your attorney in this case. Have you had an opportunity to talk to Mr. Barney about your case?

"Defendant Thacker: Yes, sir, but I was not very happy. I have conversed on the matter with Mr. Barney on several different oc-

casions, but I was not very happy with the way the procedures were going." * * *

[Thacker then complained that Barney had not complied with his request that Barney subpoena certain witnesses and a diary that belonged to the deceased. But it was revealed during the colloquy that the deceased's mother had told Barney no diary was among the deceased's belongings. And, in response to the judge's questions about the nature of the testimony the requested witnesses could give, Thacker told him only that one witness could give evidence about Charlotte Tate Haq's "emotional status".]

"The Court: So you are all ready with those exceptions?

"Defendant Thacker: Yes, Your Honor.

"Mr. Barney: If Your Honor please, I have been accused by my own client of not preparing his case to his satisfaction. As the Court realizes, I was appointed in this case and it was the duty of the attorney to prepare his case to the best of his ability; that he should be the one who will say how the case should operate, who should be called and who should not be called.

"I have spent quite a bit of time on this case. I have been up to Charlottesville probably half a dozen times. I have interviewed Mr. and Mrs. Tate [the victim's father and mother, who lived in Charlottesville]. I have been up to the hospital. I have checked in Richmond probably a dozen times, I don't know how many hours I have spent on this.

"I think the record should also show that at one time the defendant made a motion to the Court to have me relieved. He came up here and, if your Honor recalls, you appointed Mr. Partridge [a Petersburg attorney]. You asked him if he wanted any Petersburg attorney. If I recall correctly, he stated that he did not want any lawyer from the City of Petersburg. You did not appoint him a lawyer and you informed him that I would still represent him.

"At that time, Your Honor, he went to jail and told the Police Officer that he would kill me. I went over to the jail and talked to him as soon as I got the word and he denied it. He also, at that time, refused to see me.

"I have slips in my records where I have gone over to the jail to talk to him and he has refused to see me. Of course, I have the dates, and the slips are witnessed by one of the jailers over there.

"In the meantime, I still continued to work on this case so far as checking the law, so far as checking the witnesses and other various

aspects. About two or three weeks ago, I went over to see him and lo and behold, he came down and talked to me.

"Now, this has been a hard case. I have spent a lot of time on this thing. The defense is going to be temporary insanity.

"* * *

"I feel that I have done my best in this case. If he does not want me, then I make a motion that I be taken off this case and that he be appointed another lawyer.

"The Court: Motion is overruled.

"* * *

"The Court: You are all ready for trial now, are you?

"Mr. Barney: As well as I will ever be, Judge.

"* * *

"The Court: With regards to the comments by Mr. Barney—preserves the notes on them. It is the Court's observation that Mr. Barney has been very diligent in his preparation of this case for trial. The Court feels that he has done everything in his power that can be expected in order to prepare this case. Mr. Barney is known as a capable criminal trial lawyer. The Court feels the defendant certainly has been and will be represented by competent counsel."

The record indicates that the veniremen were in the courtroom at the time the colloquy took place, but the record does not show that they heard the remarks made by Thacker, his counsel or the judge.

Twenty qualified jurors were then selected and, after each side had stricken four names, a jury of twelve was seated. The court asked counsel whether they had any objection to the twelve jurors who had been seated. Defense counsel, as well as the Commonwealth's attorney, answered "No".

It should be noted that the remarks of which Thacker now complains were prompted by the trial judge's commendable desire to find out whether Thacker had had the opportunity to confer with his trial counsel. After Thacker replied that he had conferred with his trial counsel, he proceeded to express dissatisfaction with his counsel. Understandably, counsel requested permission to withdraw because of Thacker's dissatisfaction.

Counsel apparently did not believe that his remarks or Thacker's remarks would prejudice the jury in its consideration of the case. Counsel made no objection to impaneling the jury, he did not suggest during the trial that those remarks caused prejudice, and he did not move for a mistrial. For this reason, as well as the reasons to be

mentioned, we reject this assignment of error. *Huddleston* v. *Commonwealth*, 191 Va. 400, 61 S.E.2d 276 (1950); *Looney* v. *Commonwealth*, 145 Va. 825, 133 S.E. 753 (1926).

Counsel was justified in concluding that the remarks did not prejudice the jury in its consideration of Thacker's defense. If anything, counsel's statements about his difficulties in dealing with Thacker should have buttressed, not undermined, the defense of insanity.

Appellate counsel argues that some of the veniremen were friends of Thacker's trial counsel and that they "having heard him [trial counsel] castigated by the defendant may have been prejudiced to the detriment of the defendant. * * * The attorney for the defendant, being a local resident and well known to the jury panel . . . may have elicited sympathy for himself and emnity for the defendant when the accusation of incompetency was levied against him by the defendant". Under these circumstances, counsel concludes, Thacker was denied a fair and impartial trial.

But even if we accept appellate counsel's conjecture that the colloquy generated sympathy for trial counsel, we cannot accept the conclusion urged by Thacker's appellate counsel. By cross-examination, introduction of testimony for the defense and argument to the jury, trial counsel exerted on Thacker's behalf every reasonable effort to persuade the jury to return a verdict of not guilty. Sympathy for trial counsel should therefore have inured to Thacker's benefit, not to his detriment.

There has been no showing that the colloquy immediately before the trial prejudiced Thacker. Thacker's counsel cites no authority to support his contention that the trial did not conform with the requirements of the Fourteenth Amendment to the United States Constitution, and we are not aware of any such authority.[1] We therefore

---

1 In his brief, Thacker's counsel cites only one case, *State* v. *Dephenbaugh*, 106 W.Va. 289, 145 S.E. 634 (1928). That case, however, does not support his position. The Court held that the trial court committed no error in overruling defense counsel's challenge of a venireman who had heard a portion of the evidence during a previous trial of the same case.

Thacker's counsel does not cite *Farrar* v. *Commonwealth*, 201 Va. 5, 109 S.E.2d 112 (1959), but that case is cited and distinguished in the brief for the Commonwealth. There we held that the court erred in overruling defense counsel's motion to exclude eight veniremen from the jury impaneled to try Farrar. These veniremen had been summoned for the earlier trial of one Alfred Howard, but were not selected as members of the jury that tried him. Immediately before Howard's trial they heard Howard's indictment for sodomy read. That indictment mentioned Farrar as the other person involved in the alleged crime. After Howard's trial and before Farrar's

hold that Thacker had a fair and impartial trial in keeping with the requirements of the Fourteenth Amendment.

■ Defense counsel objected to the court's refusal to give certain instructions. One of these instructions would have told the jury that Thacker could be found guilty of no higher crime than voluntary manslaughter if it found that the conduct of the deceased provoked Thacker's passion and anger and, before a reasonable cooling period had elapsed, he killed her. This instruction was properly refused because there was no evidence to support such a finding. See *Taylor* v. *Commonwealth*, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947). The other instructions tendered by defense counsel and refused by the court were also properly refused.

Counsel assigned error to the overruling of trial counsel's motion to be relieved from further representation of Thacker and the overruling of the motion to set aside the verdict as contrary to the law and the evidence. Neither of these points was pressed before us, and we find them without substance.

*Affirmed.*

---

trial, local newspapers reported that Howard had been convicted and that Farrar would be tried later.

We found that it might be reasonably inferred that these eight persons were biased against Farrar because of their association with Howard's case. And we pointed out that where separate trials are granted for persons accused of commission of a crime while acting in concert, doubt would be cast aside by excluding at the trial of the second accused all veniremen who had been called for the trial of the first accused.

In *Farrar*, as distinguished from the present case, there was conflicting evidence on the question whether the defendant had perpetrated a criminal act. So the jury's possible inference of Farrar's guilt by association with Howard, who had already been convicted of the crime, could have been an important factor in its decision to return a verdict against Farrar.

The Supreme Court of the United States in recent years has reversed state court convictions because the trials did not conform with the requirements of the Fourteenth Amendment. *E.g. Sheppard* v. *Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.ed.2d 600 (1966); *Estes* v. *Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.ed.2d 543 (1965); *Rideau* v. *Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.ed.2d 663 (1963). But those cases involved denial of due process because of bedlam in the courtroom during the trial or prejudice engendered by publicity through the news media. We find no similarity between those trials and Thacker's trial.