OSBOURNE CLINTON McGANN

v.

COMMONWEALTH OF VIRGINIA

No. 1383-91-4

Decided December 15, 1992

COUNSEL

Marvin D. Miller, on briefs, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—Osbourne Clinton McGann (McGann), appellant, was convicted by a jury of distribution of cocaine. On appeal, he contends that the trial court erred (1) in limiting his cross-examination of two police witnesses, and (2) in refusing to strike jurors who had previously heard a prosecution witness testify against a different defendant in an unrelated case. Finding no error, we affirm.

On June 29, 1990, Special Agent Jeffrey Zirkle of the Virginia State Police and Investigator James Printz of the City of Winchester Police Department met with Kathy Lewis (Lewis), a confidential informant. Lewis, who had been charged with several drug distribution offenses and was working for the police pursuant to a plea agreement, had worked with the officers on five other occasions.

On this occasion, the officers instructed Lewis to meet and purchase crack cocaine from McGann and gave her $700 for that purpose. After Special Agent Zirkle "patted down" Lewis, he and Investigator Printz proceeded to a surveillance location across the street from the location where Lewis would attempt to purchase the drugs; they observed the events and monitored Lewis' bodywire. Officer Miller of the City of Winchester Police Department drove Lewis near the location where she would make the purchase and placed a wire on her body. Lewis left the vehicle at 12:35 p.m. and walked to the designated location.

No one responded when Lewis knocked on the side porch door of the residence. When Lewis returned to the residence a few moments later, she saw McGann on the front porch. Lewis told McGann she wanted to purchase $700 worth of cocaine, but McGann said that he could only offer her $500 worth of cocaine. Once Lewis agreed to these terms, McGann went around to the side of the house and returned to the side porch twenty seconds later. He appeared to have something in his hand and was "messing around with his pants." McGann leaned down and placed an object under a bench on the side porch. When McGann "came back up, he didn't have anything in his hand." McGann returned to the front porch and told Lewis to place the money "in a little hole in a cushion" of a bench on the front porch, and then to get the drugs from the side porch. After Lewis placed the money in the cushion, she went to the side porch, "bent down under the bench where [McGann] had placed something, picked an object up and put it in her pocket, and left." At approximately 12:45 p.m., Lewis returned to Officer Miller's car and delivered the

cocaine and $200 to him. Two minutes after Lewis left, McGann retrieved the money Lewis had placed in the cushion.

## I.

McGann first contends that the trial court improperly limited his cross-examination of Officer Miller and Special Agent Zirkle.

Before cross-examining Officer Miller, defense counsel approached the bench and, out of the hearing of the jury, sought a ruling from the trial judge regarding the use of certain information for impeachment. Defense counsel told the trial judge that he had been informed that Officer Miller was under investigation by the police department and may have been demoted, but admitted that he did not have any documents or "anything specific" to support the allegations. The trial judge ruled that the information could not be used for impeachment. McGann alleges on appeal that he was improperly denied the right to question Officer Miller regarding a motive for bias.

■ We find that defense counsel's failure to proffer the expected testimony of Officer Miller bars our review of this issue. "When cross-examination is limited by the court and the accused challenges the court's ruling on appeal, he or she must make a proper proffer of the excluded testimony." *Stewart v. Commonwealth*, 10 Va. App. 563, 568, 394 S.E.2d 509, 512 (1990). The record shows that defense counsel did not make a proffer of the expected testimony of Officer Miller regarding his alleged investigation and demotion; nor did the witness respond to questions posed by defense counsel outside the presence of the jury. Because the record does not contain the expected testimony of Officer Miller, we are unable to review the trial court's ruling. Thus, we can find no error.

McGann also contends that he should have been permitted to examine notes that Special Agent Zirkle reviewed the morning of trial before coming into court to testify. Although the exact nature of these notes is not entirely clear from the record, the trial judge referred to the notes defense counsel sought as materials from the case file. McGann asserts that the principle of "present recollection refreshed" entitles him to review and use in cross-examination the materials Special Agent Zirkle used to refresh his recollection prior to testifying. We disagree.

■ Generally, when a witness has a memory lapse on the stand and "forget[s] some portion (or even all) of the facts of the matter

about which [he or she is] called to testify," a party may attempt to "refresh" the witness's memory by having the witness examine materials relating to the matter for which they are testifying. Charles E. Friend, *The Law of Evidence in Virginia* § 18 (3d ed. 1988). One method of refreshing a witness's memory, commonly referred to as "present recollection refreshed," permits a witness who is unable to independently recall all of his testimony to examine "any material" and then "testify *from independent memory*, which has supposedly returned to him upon sight of the refreshing material." *Id.* § 18(a) (emphasis in original). When a witness's recollection is refreshed in this manner, "the adverse party has the right to examine the material, to use it in cross-examining the witness, and to show it to the jury." *Id.*

Here, Special Agent Zirkle did not have a memory lapse while testifying. To the contrary, he was able to independently recall the facts of the incident and, therefore, it was unnecessary for the prosecutor to show Special Agent Zirkle materials in order to refresh his memory. Because Special Agent Zirkle testified from an independent recollection of the incident and did not refresh his memory while on the stand by examining any materials, the principle of "past recollection recorded" does not apply.[1]

 Indeed, the majority of jurisdictions have held that materials used by a witness before coming into the courtroom to testify in order to refresh his or her memory are not available for inspection by the opposing party unless the court in its discretion orders otherwise. Annotation, *Refreshment of Recollection By Use of Memoranda or Other Writings*, 82 A.L.R.2d 473, 562 (1962). *E.g.*, *Kimbrough v. State*, 219 So. 2d 122, 124 (Fla. Dist. Ct. App. 1969). *Contra People v. Scott*, 193 N.E.2d 814, 821-22 (Ill. 1963) (finding "no substantial or logical difference" between refreshing memory prior to stepping into courtroom and refreshing memory while testifying in the courtroom). Moreover, as a practical matter, requiring a witness to remember, reveal, and produce all those documents which may have refreshed his or her recollection before testifying would not only be cumbersome, but also would discourage witnesses from reviewing records prior to trial to ensure the accuracy of their testimony. It is simply unrealistic to expect a police officer to testify competently and accurately with-

---

[1] By the same token, had the prosecutor shown these notes to Zirkle, in the event he was unable to recall all the pertinent facts while he was testifying on the stand, defense counsel would have been entitled to demand production of these materials for his inspection.

out reviewing a case file prior to the trial. Thus, we find no abuse of discretion in the trial court's refusal to order the production of these materials for defense counsel's inspection.

## II.

McGann's second assignment of error alleges that he was denied an impartial jury because the trial court refused to strike jurors who had previously heard Lewis, the prosecution's chief witness, testify against a different defendant in an unrelated trial, *Commonwealth v. Pink*.[2]

During voir dire, defense counsel asked the court to strike these jurors for cause, stating that Lewis' credibility was a "crucial issue in this case" and that it would be difficult for the jury to "weigh her credibility and testimony" given the fact that "they have seen her testify before." The trial court replied that "if they found her credible on the one occasion, that doesn't necessarily mean they will find her credible [on] another." The trial court instructed defense counsel to phrase the question: "So as to the fact that they have sat on a jury in which she was one of the witnesses, would that affect their [ability] to sit as fair and impartial jurors in this case." Defense counsel, after noting his objection, began asking a series of questions, without pausing for a response, until the judge finally interrupted and asked the jury: "Can you weigh her testimony the same as any other? Would you give her testimony any more weight because you have heard her testify before?" The record reflects that "[n]one of the jurors responded in the negative." The judge then noted, "All right. And there is no response from the alternate either." During the preliminary instructions before voir dire, the trial judge had instructed the jurors that "if any of you have a response to any questions, I would ask that you raise your right hand." At a post-trial hearing, the judge stated that when the jurors did not make any negative response to the question posed, "[t]hey were telling me they could be impartial."

An accused is entitled to an impartial jury. "The court's duty, in the exercise of its discretion, is to empanel jurors who are free from bias or prejudice against the parties and who 'stand indifferent in the cause.' " *Scott v. Commonwealth*, 1 Va. App. 447, 451, 339 S.E.2d 899, 901 (1986) (quoting *Breeden v. Commonwealth*, 217 Va. 297,

---

[2] Our review of the record shows that nine of the veniremen and the alternate on the panel had sat on the jury in *Commonwealth v. Pink*, where Lewis had been a prosecution witness. Three of these nine jurors were excused from the venire in McGann's trial by counsels' peremptory strikes.

298, 227 S.E.2d 734, 735 (1976)), *aff'd*, 233 Va. 5, 353 S.E.2d 460 (1987).

■ McGann's contention that the trial court should have struck the jurors for cause is nothing less than an attempt to create a *per se* rule of disqualification when a juror has previously heard a key witness testify in an unrelated case. *Per se* rules of disqualification, which are based on "a presumption of bias or prejudice," are disfavored in Virginia. *Scott*, 1 Va. App. at 452, 339 S.E.2d at 901. Absent evidence to the contrary, we find no basis for presuming that jurors who have heard a key witness testify in an unrelated case are inherently biased or prejudiced and, thus, conclusively partial so as to be unfit to sit in a case where that witness will again testify. Accordingly, we decline to adopt a rule automatically disqualifying from jury service any juror who has previously heard a key witness testify in an unrelated case. *See Slade v. Commonwealth*, 155 Va. 1099, 1105, 156 S.E. 388, 390 (1931) (jurors not incompetent to try related cases involving different issues and law in the same term); *Burford v. Commonwealth*, 132 Va. 512, 516, 110 S.E. 428, 429 (1922) (jurors not disqualified because previously convicted same defendant of different offense); *Fletcher v. Commonwealth*, 106 Va. 840, 847, 56 S.E. 149, 151 (1907) (having same witnesses testify in similar cases during same term does not, standing alone, constitute error).

■ Having found that the jurors were not automatically disqualified as a result of having previously heard Lewis testify, we must next decide whether they were otherwise qualified to sit, that is, whether they were impartial. "If a venireman is not subject to an automatic exclusion, he or she must still be excluded if there is any reasonable doubt regarding his or her impartiality. . . . [T]his determination rests within the sound discretion of the trial court and will not be disturbed on appeal absent manifest error." *McGill v. Commonwealth*, 10 Va. App. 237, 241, 391 S.E.2d 597, 600 (1990) (citation omitted). In order to determine whether the trial court abused its discretion in finding that the jurors were impartial, we address the issues raised by McGann by referring to the voir dire proceedings.

McGann contends that the jurors would have had to call into question their prior conviction in the *Pink* case if they found Lewis not credible in the present case. To the contrary, these jurors would not necessarily have had to find Lewis credible both times in order to be consistent. As the trial court noted, the jury might well find a witness credible in one case but not credible in a second case. Absent some

evidence in the record to the contrary, we find no merit to McGann's contention that the jurors would necessarily believe Lewis in this trial simply because they had found her credible in a prior trial.

This case presents an entirely different factual scenario than that in *Farrar v. Commonwealth*, 201 Va. 5, 109 S.E.2d 112 (1959), where veniremen called for Farrar's trial had sat on the venire in a co-defendant's trial. In *Farrar*, the two co-defendants were charged with the same offense, committing a crime against nature, and were given separate trials. Veniremen who were called for the co-defendant's trial and were struck from that panel were later called to sit on the venire in Farrar's trial. The Court ruled that the veniremen called for the co-defendant's case could not sit on the venire in Farrar's case because the co-defendants were charged with the same offense, which was committed while acting in concert; the veniremen had seen the co-defendant and had heard him plead; and they had heard the indictment against the co-defendant, which mentioned Farrar's name. *Id.* at 8-9, 109 S.E.2d at 114-15. Here, the *Pink* and *McGann* trials were unrelated and no evidence in the record suggests that the jurors in question learned anything about McGann in the *Pink* trial that would be harmful to McGann. The only link between the two cases is the testimony of prosecution witness Lewis. Thus, *Farrar* is not controlling here.

McGann also alleges that the jurors made no response to the question posed, and should have been required to give an affirmative response that they could be impartial. The judge's instruction to the jurors to raise their hands if they had a response to any question explains the lack of a response to the question posed. The question asked, whether "you [would] give her testimony any more weight because you have heard her testify before," would elicit a response only if a juror believed that he or she would give Lewis' testimony more weight because of his or her prior jury service in the *Pink* case. Thus, the lack of a response indicates that no juror would give Lewis' testimony more weight simply because he or she had previously heard her testify. Although the manner in which the questions were posed to the panel was not as precise as it could have been, it is clear that a response would have indicated that a juror could *not* be impartial. Indeed, the judge stated that when the jurors did not make any negative response to the question, "[t]hey were telling me that they could be impartial." Based upon the instructions given to the jurors, the trial judge could reasonably conclude that the lack of a response meant that the jurors could be impartial.

■ Moreover, we find no merit to McGann's allegation that the trial court should have elicited an affirmative response from each juror that he or she could be impartial. The manner of selecting a jury is within the sound discretion of the trial judge. *McGill*, 10 Va. App. at 241-42, 391 S.E.2d at 600. Upon an examination of the entire voir dire, we cannot conclude that the trial court's failure to elicit an affirmative avowal of impartiality, when the jurors had already indicated that their prior jury service would not cause them to give more weight to Lewis' testimony, was error. The voir dire did not reveal any prejudice or bias among the jurors who had previously heard Lewis testify. "The court does not abuse its discretion when it seats a juror whom voir dire shows to be impartial, regardless of the juror's prior jury service." *Watkins v. Commonwealth*, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985), *cert. denied*, 475 U.S. 1099 (1986). Furthermore, although McGann objected to the trial court's refusal to strike for cause the jurors who had sat on the *Pink* case, McGann did not object to the manner in which the judge phrased the question. For this reason, McGann has waived any challenge to the manner in which the question was asked.

For these reasons, we conclude that the trial court did not abuse its discretion in refusing to strike from the panel jurors who had sat in *Pink v. Commonwealth*. Accordingly, McGann's conviction is affirmed.

*Affirmed.*

Barrow, J., and Willis, J., concurred.