COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Petty and Huff
Argued at Richmond, Virginia

PUBLISHED

ALEX MICHAEL RAMOS

v.        Record No. 1595-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
NOVEMBER 12, 2019

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Richard E. Moore, Judge

John P. Joyce (Snook & Haughey, P.C., on brief), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Alex Michael Ramos ("appellant") appeals his conviction for malicious wounding in

violation of Code § 18.2-51 for his participation in a fight at the disturbances arising out of the

"Unite the Right" rally in Charlottesville.  After a jury trial in the Circuit Court for the City of

Charlottesville, the jury convicted appellant, and the trial court sentenced him to six years'

imprisonment in accordance with the jury's recommended sentence.

Appellant raises three assignments of error.  First, he argues the trial court erred by not

excusing, for cause, jurors who were aware that another defendant was convicted the prior day

for a malicious wounding of the same victim in the same incident.  Second, he argues the trial

court erred by denying his motion to change venue.  Third, he argues the trial court erred in

denying his motion to strike because the evidence was insufficient to prove he acted with the

requisite malice.

This Court disagrees with appellant's assertions.  First, this Court declines to create a *per*

*se* rule requiring a trial court to strike those familiar with another defendant's conviction.

Second, appellant waived his change of venue claim by failing to renew it after a jury was empaneled. Third, a single punch to the head is a significant enough attack from which the jury could infer malice when the blow was struck after the victim was already on the ground having been repeatedly struck by a mob of individuals.

## I. BACKGROUND

"This Court considers 'the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below.'" Hawkins v. Commonwealth, 64 Va. App. 650, 652 (2015) (quoting Bolden v. Commonwealth, 275 Va. 144, 148 (2008)). So viewed the evidence is as follows:

On August 12, 2017, several white-supremacist groups held the "Unite the Right" rally in Charlottesville. Deandre Harris, the victim of the malicious wounding, gathered with several friends in the area and joined a group of counter-protesters. After several hours of conflict— before the rally was scheduled to start—between rally participants and the counter-protestors, the police ordered everyone to disperse.

As the participants and counter-protesters headed back toward the parking garages, Harris observed an acquaintance in a dispute over a flag. Believing his acquaintance was about to be stabbed with the flagpole, Harris intervened and struck the flagpole with a Maglite flashlight he had been given earlier in the morning. Harris was pepper sprayed. A general melee broke out. As Harris stumbled away, he was struck. The group of people fighting moved away from him. Harris staggered to his feet and ended up surrounded again. At least three individuals other than appellant struck Harris. One used poles; one used a large stick of wood like a 2" x 4"; and another used a shield. Several of them, and a few others, kicked him at the same time. Harris fell to the ground. Appellant joined the fray. He had a shirt wrapped around his fist and might have had an object in his hand concealed by the shirt. He wound up with his fist and struck

Harris while Harris was still on the ground. Harris then got up and ran away with a bloody face, stumbling as he went.

Appellant was indicted for malicious wounding in violation of Code § 18.2-51. Before trial, he moved for a change of venue. He argued the publicity and public outcry over the violent events of that day made it impossible for him to receive a fair trial before an impartial jury. The trial court declined to grant the motion before jury selection, taking the motion under advisement and inviting appellant to renew his motion during *voir dire*. Appellant never renewed the motion or further requested a ruling on the motion. After the jury had been sworn and the first witness had testified, the Commonwealth noted that the motion for a change of venue had not been finally ruled on, and the trial court then denied the motion.

Jacob Goodwin, the individual with the shield who participated in attacking Harris, was tried on the two days immediately before appellant's trial. Goodwin was found guilty of malicious wounding and sentenced to ten years' imprisonment. See Goodwin v. Commonwealth, ___ Va. App. ___, ___ (Nov. 12, 2019). During *voir dire* in appellant's trial, it was discovered that some in the venire were aware, to varying extents, of Goodwin's conviction. One potential juror, R.A., saw a headline about Goodwin's conviction, but did not read the story. Another, M.W., knew Goodwin was convicted and sentenced to ten years' imprisonment, but did not know the charge on which he was convicted. The potential juror who knew the most, L.T., stated he knew the previous defendant was convicted of malicious wounding and sentenced to ten years. Four more potential jurors knew something, but three had knowledge that was similar to M.W., R.A., or L.T. and one was never asked specifically what she knew.[1]

---

[1] A fifth who also had knowledge was excluded for cause when the trial court doubted her answer that she could set aside what she knew.

After the individual *voir dire* of the last of the potential jurors, M.W., appellant moved to strike M.W. and "people who know about the Goodwin verdict." The trial court denied the motion. It concluded appellant could not make a general objection to multiple jurors in that fashion, but stated it would permit appellant to question any of the jurors more specifically if he wanted to so he could make individualized motions. Appellant did not question any potential juror further.

At the close of the evidence, appellant moved to strike on the ground that the Commonwealth had not proved malice because appellant only hit the victim once. The trial court denied the motion. The jury convicted appellant and recommended a sentence of six years' imprisonment. The trial court imposed the jury's recommended sentence, and this appeal followed.

## II. ANALYSIS

### A. Juror Selection

Appellant argues the trial court erred by not striking jurors who were aware Goodwin had been convicted of malicious wounding the previous day. Appellant argues that because they knew Goodwin had been convicted the day before for his participation in the same beating, they would defer to the earlier jury on the issue of whether the Commonwealth had proved a malicious wounding occurred. He argues that when a defendant is accused based on a concert of action theory and prospective jurors know about the conviction of a co-defendant who was tried separately, those prospective jurors are *per se* disqualified. This Court disagrees.[2]

---

[2] The Commonwealth argues that appellant waived his argument as it relates to any potential juror except Juror M.W. Appellant makes no individualized argument in his brief. He contends that any knowledge of Goodwin's conviction creates a bar to serving on the jury. As he confirmed at oral argument, he is only arguing for a *per se* rule. If he is correct that a *per se* bar is warranted, then a general objection to all who possessed that knowledge, like appellant made in this case, would sufficiently alert the trial court to the issue to be determined.

On review, this Court gives significant deference to a trial court's decision to strike a prospective juror or not, "because the trial court was able to see and hear each member of the venire respond to the questions posed." Lovitt v. Commonwealth, 260 Va. 497, 510 (2000), cert. denied, 534 U.S. 815 (2001). Accordingly, our review is "for an abuse of discretion and [the trial court's] ruling will not be disturbed on appeal unless it appears from the record that the trial court's action constitutes manifest error." Cressell v. Commonwealth, 32 Va. App. 744, 755 (2000). "In conducting our review, we consider the juror's entire *voir dire*, not merely isolated statements." DeLeon v. Commonwealth, 38 Va. App. 409, 412-13 (2002) (quoting Lovitt, 260 Va. at 510).

A defendant in a criminal case in Virginia is entitled to a jury panel free of potential bias or other disqualifying characteristics before exercising peremptory challenges. Id. at 412. A prospective juror must be able to give the defendant "a fair and impartial trial." Breeden v. Commonwealth, 217 Va. 297, 298 (1976). Through the *voir dire* process, "the trial judge must probe the conscience and mental attitude of the prospective jurors to ensure impartiality." Griffin v. Commonwealth, 19 Va. App. 619, 621 (1995). Although a potential juror may have some knowledge of the case, or preconceived or even erroneous notions about the legal system, the "test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." Id.

Appellant argues that Farrar v. Commonwealth, 201 Va. 5 (1959), mandates reversal. In Farrar, the defendant and another man were charged with consensual sodomy with each other. Their trials were severed. The other man was tried first. When Farrar was later tried, eight members of the venire from the other man's trial were part of the venire for Farrar's trial. Although those prospective jurors did not hear the evidence in the earlier trial, they did hear the other defendant's arraignment and the charges, which mentioned Farrar's name. Although Farrar

did not establish that the prospective jurors had read the newspapers, the other defendant's conviction had been reported in the paper. The Supreme Court held that those prospective jurors should have been excluded from the venire. Id. at 9. The Court noted that the jurors had such an "*association with [the first defendant]'s case* that it may be reasonably inferred that bias on their part operated in the trial of Farrar." Id. at 8 (emphasis added). Appellant contends that the juror's awareness of the verdict in Goodwin's case creates the same reasonably inferred bias that should require a *per se* exclusion of those prospective jurors.[3]

Nevertheless, a key distinction separates this case from the circumstances of Farrar.[4] Even assuming, without deciding, that Farrar created a *per se* rule of exclusion, the prospective jurors in Farrar learned about Farrar's potential involvement in the crime in official proceedings related to his co-defendant. A baseline of what they knew could be obtained from the official record of the proceedings, and all the prospective jurors knew that Farrar had been named in the other defendant's charges. Here, the prospective jurors' knowledge of Goodwin's case, and its

---

[3] Appellant also contends that his jury would be likely to defer to the Goodwin jury on its findings because some members of his jury knew about the Goodwin verdict. Although both juries returned guilty verdicts, the two juries recommended significantly different sentences. This suggests appellant's jury did not rely on the Goodwin verdict despite having some knowledge of it.

[4] A second distinction also limits Farrar's applicability. Farrar and the other defendant had been charged with consensual sodomy with each other, and their names were in each other's indictments. Convicting the first defendant—under those circumstances—necessarily meant the jury found Farrar had also engaged in consensual sodomy. Here, although the Commonwealth proceeded on a concert of action theory, Ramos was not named in Goodwin's indictment. Moreover, given the number of people in the crowd attacking Harris, Goodwin's jury did not necessarily conclude that Ramos was part of the concert of action. Given the unique circumstances, if Farrar creates a *per se* rule, it is limited to cases where the conviction of one defendant necessarily means the other defendant engaged in criminal conduct.

- 6 -

connection to appellant's, varied greatly, and the source of that knowledge was the media, not the court itself.[5]

"*Per se* rules of disqualification, which are based on 'a presumption of bias or prejudice,' are disfavored in Virginia."[6] McGann v. Commonwealth, 15 Va. App. 448, 454 (1992) (quoting Scott v. Commonwealth, 1 Va. App. 447, 452 (1986)). Given that "jurors need not be totally unaware of the facts and issues involved in the case," Mueller v. Commonwealth, 244 Va. 386, 404 (1992), overruled on other grounds by Morrisette v. Warden of Sussex I State Prison, 270 Va. 188 (2005), this Court concludes that *per se* disqualification is not warranted merely because a potential juror has knowledge of the conviction of a separately tried co-defendant.

When the prospective juror learns about separate proceedings involving a co-defendant, the extent of the venireperson's knowledge about the other case will be critical in determining whether they can remain impartial. A prospective juror who vaguely knows that another person was convicted of some crime will not need to be excluded on that basis, but a prospective juror who knows the details of the other case and how it is connected to the case for which he is being

---

[5] One potential juror, L.B., had been a part of the venire in Goodwin's trial and had been stricken from that jury with a preemptory strike. He knew about the guilty verdict and assumed the conviction was for malicious wounding. Nevertheless, appellant moved to strike him for cause because of his associations with movements associated with the counter-protestors and his admitted beliefs about the participants in the Unite the Right rally. Appellant did not move to strike him, pursuant to Farrar, because he was part of the venire for Goodwin's trial. Thus, any argument that L.B. should not have been seated on the jury because he was part of Goodwin's venire is waived. Rule 5A:18.

[6] Nevertheless, *per se* disqualification of some jurors to "maintain public confidence in the judicial system," is sometimes warranted. Mayfield v. Commonwealth, 59 Va. App. 839, 846 (2012). Challenging a juror for cause based on potential bias does not preserve an argument that the juror is one who is *per se* disqualified to preserve the public confidence. Id. Here, appellant only argued, both in this Court and the trial court, that the jurors were potentially biased against him. Thus, this Court will not consider whether jurors who have some knowledge of the conviction of a separately tried co-defendant should be *per se* disqualified to preserve public confidence in the judicial system.

considered might warrant further questioning about potential bias. The trial court would need to evaluate that individually.[7] Thus, the trial court did not abuse its discretion in rejecting appellant's challenge to all the prospective jurors who had any knowledge of Goodwin's conviction.[8]

## B. Change of Venue

Appellant argues that the trial court erred by denying his motion for a change of venue. He argues it was impossible for him to have a fair trial in Charlottesville, i.e. to be tried by an impartial jury. He claims that there was significant danger that he would be punished because he was a part of the Unite the Right rally that caused the disturbances in the city. He also claims that there is a danger that the jurors would be overly concerned with the fallout from an acquittal and would convict him merely to avoid another riot. He thus claims that jurors from Charlottesville would likely decide his case for reasons other than the evidence and the applicable law. Appellant, however, failed to preserve these arguments.

Although appellant moved to change venue, he did not timely obtain a ruling on the motion. The trial court did not initially deny the motion. Instead, the trial court took the motion under advisement and nothing further was said until after the jury was empaneled and the case

---

[7] Obviously, the trial court and counsel will have to exercise care during *voir dire*, even during individual questioning, to ensure they do not provide a juror with information about the other case, or the connection between the cases, that the juror does not already have. Although that may be a difficult task, that difficulty does not warrant a *per se* rule of exclusion.

[8] Although the Commonwealth concedes that appellant preserved an argument that prospective juror M.W. should have been excluded based on his knowledge of the Goodwin conviction, appellant does not make an argument in this Court why, when considered individually, M.W.'s knowledge specifically justified his exclusion. Appellant's argument is all or nothing. By failing to make an individualized argument, appellant has waived any argument as to M.W.'s specific knowledge and whether it justified his exclusion. Accordingly, this Court need not consider it. See Rule 5A:20(e) (requiring appellant's brief include argument and authorities in support of his claims on appeal).

was being heard.  The Supreme Court has held that when a trial court takes a change of venue motion under advisement, it is "incumbent upon [the defendant] to renew the motion before the jury was empaneled and sworn, or at least remind the court that it was still pending and that he wanted the court to rule on it."  Riner v. Commonwealth, 268 Va. 296, 310 (2004) (quoting Green v. Commonwealth, 266 Va. 81, 94 (2003)).  Appellant did not renew his motion for a change of venue, or insist on a ruling, before the jury was empaneled.  Although the Commonwealth eventually requested a ruling on the motion, it was not until after the jury was sworn, the first witness had testified, and jeopardy had attached.  Cummings v. Commonwealth, 24 Va. App. 248, 251 (1997) ("[J]eopardy attaches . . . after a jury is empaneled and sworn in a jury trial . . . ." (quoting Martin v. Commonwealth, 242 Va. 1, 8 (1991))).  That was too late. Thus, appellant has waived his claim, and this Court will not consider it.  Rule 5A:18.

### C.  Sufficient Evidence of Malice

Appellant argues the evidence was insufficient to support his conviction.  He argues there is insufficient evidence of malice, and therefore the trial court should have stricken the malicious wounding charge and only allowed the jury to consider unlawful wounding or some lesser assault charge.  Specifically, appellant argues that the evidence shows that at most he struck the victim once and that a single blow cannot demonstrate sufficient malice to support a malicious wounding conviction.  This Court disagrees.

"When the sufficiency of the evidence to support a conviction is challenged, it is [the appellate court's] duty to view the evidence in the light most favorable to the Commonwealth and to uphold the conviction unless it is plainly wrong or without evidence to support it."  Case v. Commonwealth, 63 Va. App. 14, 22 (2014) (quoting Powers v. Commonwealth, 211 Va. 386, 388 (1970)).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions

reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). "[T]he question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Lawlor v. Commonwealth, 285 Va. 187, 223-24 (2013).

"To be convicted of malicious wounding, the Commonwealth must prove that the defendant maliciously stabbed, cut, or wounded 'any person or by any means cause[d] him bodily injury, with the intent to maim, disfigure, disable, or kill.'" Burkeen v. Commonwealth, 286 Va. 255, 259 (2013) (quoting Code § 18.2-51) (alteration in original). "The element in malicious wounding that distinguishes it from unlawful wounding is malice, expressed or implied . . . ." Hernandez v. Commonwealth, 15 Va. App. 626, 631 (1993). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." Burkeen, 286 Va. at 259 (quoting Dawkins v. Commonwealth, 186 Va. 55, 61 (1947)) (alterations in original). "Under ordinary circumstances an intent to maim may not be presumed from a blow with a bare fist." Fletcher v. Commonwealth, 209 Va. 636, 640 (1969). Nevertheless, "an assault with a bare fist may be attended with such circumstances of violence and brutality that [malice] may be presumed." Id.

Assuming appellant only struck the victim once,[9] the circumstances under which that blow was struck support the conclusion that appellant acted with malice. Appellant punched the

---

[9] The Commonwealth argues appellant also stomped, or attempted to stomp, on the victim. It argues this was further evidence of malice. It points to the videos of the altercation as support for that argument. Having viewed the videos, it is difficult to determine if the videos support such a conclusion. This Court need not resolve that question, because even if appellant did not attempt to stomp on the victim, his single blow still evidenced malice. See Foltz v. Commonwealth, 58 Va. App. 107, 114 (2011) ("In this case, as in all others, we seek to decide cases, 'on the best and narrowest ground available' from the record." (quoting Kirby v. Commonwealth, 50 Va. App. 691, 698 n.2 (2007))), aff'd, 284 Va. 467 (2012).

victim only after the victim had already been kicked multiple times and beaten with poles, a board, and a shield. The victim was already on the ground and had stumbled trying to rise at least once. And although it is unclear how much force appellant imparted when he connected, it is apparent from the video of the altercation that appellant utilized a large wind-up to deliver a significant blow. Under these circumstances, the trial court's finding that appellant acted with malice is not "without evidence to support it." Thus, this Court affirms.

### III. CONCLUSION

This Court affirms. First, knowledge of a separately tried co-defendant's earlier conviction does not create a *per se* bar to jury service. Second, appellant waived his second assignment of error because appellant failed to renew his motion for a change of venue before the jury was sworn. Third, the evidence was sufficient to prove malice, because a single punch can be malicious when delivered at the tail end of a beating by a mob.

<u>Affirmed.</u>